Brian VUKADINOVICH,
Plaintiff–Appellant,

v.

Kathryn BARTELS, Individually and as trustee of New Durham Township School Corporation and New Durham Township, et al., Defendants–Appellees.

No. 87–2507.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1988.

Decided July 29, 1988.

Brian Vukadinovich, Valparaiso, Ind., pro se.

Donald E. Baugher, Raelson Osborn Roule Baugher & Hedge, LaPorte, Ind., Steven A. Johnson, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, Ind., for defendants-appellees.

Before BAUER, Chief Judge,
COFFEY and FLAUM, Circuit Judges.

BAUER, Chief Judge.

Plaintiff, Brian Vukadinovich, filed suit under 42 U.S.C. § 1983 alleging violations of his rights under the First and Fourteenth Amendments in connection with the termination of his employment as a public high school teacher.[1]  His complaint also

---

1.  According to the complaint, plaintiff was employed by the LaPorte County School Corpora- tion and the New Durham Township School Corporation.  The defendants are the New Dur-

included pendent state law claims. Vukadinovich alleged that the defendants fired him in retaliation for the exercise of his right to free speech after his comments regarding his resignation as basketball coach were published in a local newspaper. The district court granted summary judgment for the defendants on the First and Fourteenth Amendment claims and dismissed the pendent claims for lack of subject matter jurisdiction. Vukadinovich appeals *pro se*. Because we agree with the district judge's determination that the speech at issue addressed a matter of personal rather than public concern, we affirm the judgment for the defendants.

## I.

From 1976 to 1981, Brian Vukadinovich was a teacher of industrial arts, physical education, and drivers education at Westville High School. When he was hired, Vukadinovich was not licensed to teach industrial arts. He was assured, however, that the school would obtain a limited teaching license for him, allowing him to teach industrial arts until he could complete the courses required for certification. The superintendent did obtain a limited license for Vukadinovich by certifying "an emergency need for personnel in the teaching area," as required by Indiana regulation. *See* 530 Ind.Admin.Code 2-2-12 (1984). Vukadinovich never obtained permanent certification to teach industrial arts.

Vukadinovich also was coach of Westville's junior varsity basketball team. He alleges that, in March 1981, defendant James Rose, Principal of Westville High, told him that the New Durham Township Advisory Board had asked for his resignation as basketball coach. Vukadinovich therefore resigned from that position. Shortly thereafter, an article was published in a local newspaper regarding the resignations of Vukadinovich and another coach,

Rick List. Containing quotations from Vukadinovich and List, the article stated:

> More upset [than List] at the decision was Vukadinovich, who said, "I feel it's a shame for the school and the community it represents."

> "It was Mr. Rose and the board and trustee's wishes. For me to get called in after a 14–5 season, I certainly have questions. I feel they're obligated to say why."

> But so far, according to Vukadinovich, no reason has been given. "I've never been told that I've done anything wrong. All I was told was I wouldn't be offered a coaching position next year."

> Vukadinovich has been at Westville five years, and posted the following records: 11–8 in '76–'77, 14–6 in '77–'78, 6–12 in '78–'79, 12–8 in '79–'80 and 14–5 in '80–'81. His team won the conference championship in 1977–'78, and tied for the crown the next three years. "I'm 100 percent impressed with the school's performance. I feel it's their loss."

> "If there was a lack of interest I could understand it. But the community backed the team and I respect it. If anybody has anything to hide, fine. But I don't."

> "The decision came as a surprise after what I achieved," Vukadinovich said. When asked if technical fouls which were a common occurrence in j.v. games, were the cause of his being fired, he said, "Any verbal disagreements were between me and the refs."

> "I stood up for my players. I won't mention any names, but at a lower level there seems to be more technicals than are called on me. So if technicals were the issue, why would they come to me. They couldn't justify it as an excuse if they use it against me and not the other."

ham Township School Corporation, New Durham Township, Kathryn Bartels, a trustee of the New Durham Township School Corporation and New Durham Township, John Coulter, Lawrence E. Warnke and Eldred A. Elliott, members of the New Durham Township Advisory School Board, James Rose, Principal of Westville High School, and King Groff, Superintendent of the LaPorte County School Corporation. All of the individual defendants were sued both individually and in their official capacities.

Vukadinovich teaches industrial arts at Westville and is also the C-team coach. Asked if he will stay on as teacher, he said, "I'm not sure."

Soon after the article's publication, Vukadinovich received notice from Rose and defendant Kathryn Bartels, a trustee for the New Durham School Corporation, that his teaching contract was to be cancelled and that there would be a hearing before the New Durham Advisory Board to discuss the matter on May 5, 1981. On that date, the hearing was held and the board voted to cancel Vukadinovich's 1980–81 contract and not renew his contract for the following year. Vukadinovich's complaint alleged that his contract was cancelled in retaliation for the exercise of his First Amendment rights in commenting on his resignation as basketball coach and, additionally, that he was denied due process and that his firing violated the Equal Protection Clause.

■ In an order entered September 5, 1986, then-District Judge Kanne granted the defendants' motion for summary judgment on the First Amendment claim, finding that Vukadinovich's comments regarding his resignation as basketball coach were a matter of personal rather than public concern and thus were not protected under the First Amendment. In an order entered on August 19, 1987, the district judge denied plaintiff's motion to reconsider that determination, granted the defendants' motion for summary judgment on the due process and equal protection claims,[2] and dismissed Vukadinovich's state law claims for lack of subject matter jurisdiction. Vukadinovich appeals, arguing that he was fired in retaliation for his comments on a matter of public concern in violation of both the First Amendment and the Equal Protection Clause.[3]

## II. *The First Amendment Claim*

■ In cases where a public employee's First Amendment rights are at issue, the courts engage in a three-step analysis.

First, the court must determine whether the plaintiff's speech is constitutionally protected. This is a question of law. *Connick v. Myers,* 461 U.S. 138, 148 n. 7 [103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708] (1983); *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274 [97 S.Ct. 568, 50 L.Ed.2d 471] (1977); *Pickering v. Board of Educ.,* 391 U.S. 563 [88 S.Ct. 1731, 20 L.Ed.2d 811] (1967); *Knapp [v. Whitaker],* 757 F.2d [827,] 839, 845 [ (7th Cir.), *cert. denied,* 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985) ]. If the plaintiff's speech is protected by the first amendment, then two issues of fact must be addressed. The first factual issue is whether the defendant's actions were motivated by the plaintiff's constitutionally protected speech. *Knapp,* 757 F.2d at 845. If the plaintiff can demonstrate that his or her constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant must then have an opportunity to prove that it would have taken the same action in the absence of the plain-

---

**2.** Because of a clerical error, judgments for defendants King Groff and the LaPorte County School Corporation were not included in the August 19 order. On October 7, 1987 the district judge therefore entered judgment on behalf of all defendants nunc pro tunc August 19, 1987.

**3.** On appeal, plaintiff does not raise clearly the due process issues raised in the district court. To the extent that his *pro se* briefs and argument can be construed as raising a due process argument on appeal, we agree with the district judge's conclusion that Vukadinovich had no property interest in the renewal of his limited license to teach industrial arts. In order to sustain a due process claim, a discharged employee must establish that he had a property interest in continued employment. *Schultz v.*

*Baumgart,* 738 F.2d 231, 234 (7th Cir.1984). To determine whether a property interest exists, we look to state law to determine whether there is a "legitimate claim of entitlement." *Toney v. Burris,* 829 F.2d 622, 625 (7th Cir.1987). The Indiana regulation providing for the granting of limited licenses in effect at the times involved in this case, 530 Ind.Admin.Code 2–2–12 (1984), is discretionary in nature; the school superintendent has discretion to "verif[y] an emergency need for personnel." Moreover, a limited license is good for only one year, and the regulation states only that it "*may* be renewed every year upon the completion of six semester hours of course work directed toward a Standard License in the Limited area." 530 Ind.Admin. Code 2–12–12(6) (1984) (emphasis added).

tiff's exercise of his or her first amendment rights. *Id.*

*Hesse v. Board of Educ.*, 848 F.2d 748, 754 (7th Cir.1988) (Flaum, J., dissenting). This case involves only the first step of the analysis—the legal determination[4] whether the plaintiff's speech is constitutionally protected.[5]

"In analyzing the constitutional protection to be accorded [plaintiff's] speech, we must first determine whether the context, content and form of [his] statements as revealed by the record as a whole indicate that they were on a matter of public concern." *Hesse,* at 751 (citing *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690). Once the court determines that the matters are not of public concern, "absent the most unusual circumstances" (plaintiff makes no argument that such circumstances are present here), a federal court will not "review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Hesse,* at 751 quoting *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.

Given our reading of Vukadinovich's statements as a whole and in context, we agree with the district judge's conclusion that they related to a matter of personal rather than public concern. Although in a

sense any events which transpire in a public school are matters of public concern,[6] we have recently quoted *Connick* as stating, " 'To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark ... would plant the seed of a constitutional case.' " *Hesse,* at 752 (quoting *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691. Thus, even where a plaintiff's remarks "tangentially include general references to public education," they may not themselves be "intrinsically on a matter of public concern." *Id.*

This Court has noted that "there is a difference between criticism directed at the institution in general and disputes with which the complainant has an intimate personal involvement." *Egger v. Phillips,* 710 F.2d 292, 318 (7th Cir.1983) (en banc).... This court has recently reaffirmed its stance that even though an expression may inherently deal with a matter of public concern, the *Connick* test " 'requires us to look at the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?' " *Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir.

---

**4.** As stated above, contrary to plaintiff's assertion that the issue is one for the jury, the Supreme Court in *Connick* indicated that the determination is one for the court. 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7. Vukadinovich also argues that it was improper for the district court to decide the issue when it did not have a copy of the newspaper article before it. The district judge, however, relied upon Vukadinovich's representations as to the contents of the article. Moreover, the court did have a copy of the article before it when it denied plaintiff's motion to reconsider its ruling on the First Amendment issue.

**5.** Only if Vukadinovich's comments dealt with a matter of public concern would it then be necessary to proceed with a *Pickering* balancing of the interests of the employee as a citizen in commenting on matters of public concern against the interests of the employer. *See Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Hesse,* at 752. Similarly, because we conclude that Vukadinovich's statements are not constitutionally protected, we need not address defendants' claim that even if his statements were protected under the First Amendment and his protected speech

was a substantial factor in defendants' decision to fire him, he would nevertheless have been discharged because he was not licensed. *See Mount Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) (no constitutional violation if defendant shows "that it would have reached the same decision ... even in the absence of the protected conduct"); *see also Rakovich v. Wade,* 850 F.2d 1180, 1190 (7th Cir.1988) (en banc) ("plaintiff must show [that] 'had it not been for the violation, the injury of which he complains would not have occurred' "); *Morales v. Cadena,* 825 F.2d 1095, 1099 (7th Cir.1987) (evidence sufficient to support finding that protected activities were "but for" cause of discharge).

**6.** We believe that this was all that Judge Kanne meant when he stated, in his September 5, 1986 order, "To a degree, plaintiff's comments were directed at a matter of public concern." Thus, contrary to plaintiff's argument, we do not find this statement inconsistent with the judge's later holding that the comments did not warrant protection by the First Amendment.

1987) (quoting *Linhart v. Glatfelter,* 771 F.2d 1004, 1010 (7th Cir.1985)). The Eleventh Circuit has also noted that "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills,* 781 F.2d 1508, 1515–16 (11th Cir.1986).

*Hesse,* at 752. Vukadinovich's comments make clear that he was not attempting to bring any "wrongdoing to light" or to raise "issues of public concern, because they are of public concern." Instead, he was attempting to articulate his private dissatisfaction with his termination and the reasons given for it.

The substance of his comments was: "I had a good record and fewer technical fouls than others; I don't know why the board would ask for my resignation." In other words, it was a self-serving statement on a matter of private concern to Vukadinovich as an individual. Though indicating that he didn't know why he was asked to resign, Vukadinovich did not comment about any possible improper motives or procedures regarding the defendants' actions in asking for his resignation. His statement, "If anybody has anything to hide, fine," [7] is too vague to be construed as raising an issue of public concern; if he had *stated* that the defendants had asked for his resignation to conceal some illicit behavior, Vukadinovich would have a stronger case, but he did not.

Vukadinovich also appears to argue that the mere fact that the newspaper contacted him and published his comments indicates that his statements regarded a matter of public concern. This is not the law. [I]t is important not to equate the public's curiosity about a matter with the matter having societal ramifications. People may be interested in any number of aspects of the lives of public officials and employees, but that does not mean that such matters have societal ramifications. Conversely, the public may be extremely apathetic about certain matters of public concern.

*Egger,* 710 F.2d 292, 316–17 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

We therefore conclude that the district court correctly determined, as a matter of law, that plaintiff's comments were not protected by the First Amendment. Since there were thus no genuine issues of material fact and the defendants were entitled to judgment as matter of law, the grant of summary judgment on the First Amendment claim was proper. See Fed.R.Civ.P. 56(c).

### III. *The Equal Protection Claim*

Because we agree with the district judge's determination that Vukadinovich's speech was not constitutionally protected, we also conclude that the grant of summary judgment on his equal protection claim was proper. Vukadinovich claims only that he was treated differently than other uncertified teachers in retaliation for the exercise of his First Amendment rights. In other words, he does not dispute that he could have been fired simply because he was uncertified; instead he claims that he was selected for termination, while other uncertified teachers were not, because he exercised his right to free speech.

Such a claim fits uneasily into an equal protection framework. Normally, we think of the Equal Protection Clause as forbidding the making of invidious classifications—classifications on the basis of such characteristics as race, religion, or gender. Here, plaintiff is not claiming that he was classified on the basis of some forbidden characteristic, only that he was treated dif-

---

**7.** This comment may have referred to an incident that Vukadinovich claimed to have witnessed between defendants Rose and Bartels. In his September 5, 1986 order, Judge Kanne stated:

> In his deposition, plaintiff stated that he inadvertently stumbled upon defendant Kathryn Bartels, the New Durham Township Trustee, and defendant James Rose, the principal of Westville High School, as they were kissing in Rose's office in November of 1980.... Both defendants were aware of plaintiff's presence and attempted to attribute their ardor to the excitement of the new basketball team.... According to the plaintiff, his unfortunate chance encounter with defendants, Bartels and Rose, ultimately caused Rose to ask for his resignation as junior varsity basketball coach in March of 1981.

ferently because he exercised his right to free speech. We believe this is best characterized as a mere rewording of plaintiff's First Amendment-retaliation claim, which was properly disposed of.

The district judge, however, characterized Vukadinovich's equal protection claim as one of "selective prosecution." On appeal, the parties agree with this characterization. Assuming that it is an appropriate one,[8] it does not help the plaintiff.

In order to demonstrate that selective prosecution is a violation of equal protection, defendants must make two showings.... First, they must provide evidence that persons similarly situated have not been prosecuted. Second, they must show that the decisions were made on the basis of an unjustifiable standard ... "such as race, religion, or other arbitrary classification" ... or to prevent the defendant's [sic] exercise of a fundamental right.

*Government of the Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986) (citations omitted). Here, plaintiff alleges only that the defendants selected him for termination in retaliation for the exercise of a constitutional right. But we have concluded, as did the district judge, that, as a matter of law, Vukadinovich's speech was not constitutionally protected.[9] Summary judgment for the defendants on this claim was proper.

### IV. *Conclusion*

We agree with the district judge's conclusion that the statements at issue did not involve matters of public concern. Thus, the termination of plaintiff's employment, even if it was in retaliation for the publication of those statements, did not violate his rights under the First and Fourteenth Amendments.[10] The judgment for the defendants is

AFFIRMED..

---

**8.** We note that, in stating that a plaintiff can demonstrate that selective prosecution is a violation of equal protection by showing that he was treated differently in order to prevent his exercise of a fundamental right, the Third Circuit in *Government of the Virgin Islands v. Harrigan,* 791 F.2d 34, 36 (3d Cir.1986), cited only *United States v. Goodwin,* 457 U.S. 368, 372–74, 102 S.Ct. 2485, 2488–89, 73 L.Ed.2d 74 (1982). *Goodwin* mentioned the Equal Protection Clause only in stating that *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), held that neither the Double Jeopardy Clause nor the Equal Protection Clause prohibits resentencing after retrial when a criminal defendant successfully attacks an initial conviction on appeal. In *Pearce,* however, the Court stated, "To fit the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished." *Id.* at 723, 89 S.Ct. at 2079. We therefore have reservations about the appropriateness of the characterization of plaintiff's equal protection claim as one of selective prosecution. Since, however, we conclude that summary judgment was appropriate under either an equal protection-selective prosecution analysis or a straight First Amendment-retaliation analysis, we need not decide the question.

**9.** We therefore need not address whether plaintiff raised a genuine issue of fact as to whether the contracts of persons similarly situated were renewed for the 1981–82 school year.

**10.** On appeal, plaintiff does not challenge the dismissal of his pendent state law claims.