Sue M. BELK, Plaintiff–Appellant,

v.

TOWN OF MINOCQUA, et al., Defendants–Appellees.

No. 88–1131.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1988.
Decided Sept. 27, 1988.

Charles Barr, Barr & Shapiro, Menomonee Falls, Wis., for plaintiff-appellant.

Michael J. Cieslewicz, Kasdorf Lewis & Swietlik, S.C., Milwaukee, Wis., for defendants-appellees.

Before WOOD, Jr., FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Sue Belk, the former Town Clerk and Town Secretary of Minocqua, Wisconsin, appeals from the district court's grant of summary judgment in favor of the Town of Minocqua and certain members of its Board of Supervisors. Belk alleged that the defendants violated 42 U.S.C. §§ 1983 and 1985 when they terminated her employment in retaliation for her expression of intent to exercise her first amendment right to petition the government for redress of grievances.[1] For the reasons set forth below, we reverse and remand.

## I.

In September 1978, Belk was appointed Town Clerk of Minocqua when the elected incumbent Clerk, Evelyn Hartlep, resigned. Belk ran for the position in the subsequent general election of 1979, won, and retained the office in the 1981 and 1983 elections. In the 1985 election, however, the voters denied Belk a fourth term in office and elected instead her deputy, Marlene Kerkes.

In addition to her duties as Town Clerk, Belk was appointed Town Secretary during each of her terms as Clerk. She served as Secretary as an "at will" employee throughout her tenure in elected office. The Town classifies the office of Clerk as a part-time salaried position, while the Secretary's position is denominated a part-time hourly position. During Belk's tenure as Secretary, however, she was compensated as a full-time employee—at a rate of seven hours per day, five days per week. Apparently, it was the custom in Minocqua for the Town Clerk to also assume the Town Secretary's duties. Belk was informed that this practice was adopted in response to the town residents' refusal to authorize salaries for both a full-time Clerk and a part-time Secretary. Belk asserts that the practice of combining the Clerk and Secretary posts created the appearance that the equivalent of one full-time position had

---

1. The district court dismissed Belk's § 1985 action because she failed to offer any evidence in support of that claim. Belk does not appeal that decision. The defendants, in addition to summary judgment, sought attorneys' fees pursuant to 42 U.S.C. § 1988 or Federal Rule of Civil Procedure 11. The fee requests were denied and similarly are not at issue on appeal.

been established, when in fact the net effect of the Town's administrative structure amounted to the creation of one full-time position and a half, because the Secretary was actually paid on a full-time basis, in apparent derogation of the wishes of town residents.

Although Belk stopped serving as Clerk immediately after her election defeat, for reasons that are not clear from the record she continued to perform the duties of Secretary. In the meantime, Belk requested a special meeting of the Town Board to consider a proposal that the Board adopt a new position classification for the job of Town Secretary clarifying the duties of the position and recognizing that it was, in fact, a full-time hourly position. A special Board meeting was convened on April 4, 1985, but was subsequently adjourned until April 9. Members of the public were present when the Board reconvened to consider the announced purpose of the meeting—Belk's request for the adoption of a revised position classification for the post of Town Secretary.

The meeting commenced with Board Supervisor Hartlep, Belk's predecessor as Clerk/Secretary, reiterating that the position of Town Secretary had been a part-time hourly position since its inception. Notwithstanding that Belk no longer occupied the affiliated office of Clerk, Hartlep, in a departure from tradition, offered to allow Belk to continue in the job of Secretary, but at the rate of compensation of three and one half hours per day, five days a week. Belk apparently responded that although she desired to stay on as Secretary, she considered the Board's offer to be a demotion because she had previously been paid seven hours per day as Secretary.[2] When other Town Board members also voiced their opposition to the proposed reclassification of the Secretary's job as a full-time position, Belk stated her intention to pursue a grievance to review the Board's refusal to adopt a reclassification.[3]

Belk's announcement was apparently not what the Town Board had hoped to hear. It quickly and without further discussion voted to terminate Belk as Secretary, although such action was never contemplated by the official notice for the meeting. Following the vote, which Belk contends caught her completely by surprise, none of the Board members would respond to her entreaties to explain their decision, nor would they furnish her with an official written explanation and notice of dismissal as required by the Town Manual. Except for the instant lawsuit, Belk has taken no other steps to obtain relief—she never filed her threatened grievance, appealed the Board's decision terminating her, or complained about the lack of due process attending her summary dismissal. Consistent with past practice, Belk's successor as Town Clerk assumed the additional duties of Town Secretary, receiving compensation at the old rate of seven hours a day, five days per week.

Belk filed suit in district court under 42 U.S.C. §§ 1983 and 1985, alleging that the Town Board violated her first amendment right to petition the government for redress of grievances by terminating her in retaliation for threatening to appeal the Board's decision not to reclassify the position of Town Secretary. The district court initially rejected Belk's argument that because her claim involved the petition clause it should be analyzed under different principles than are customarily employed in cases involving public employees who are allegedly terminated for exercising their right to free speech. The court then proceeded to find that the purported substance of Belk's threatened grievance was not constitutionally protected because it did not deal with a matter of public concern. Consequently, the court granted summary judgment in favor of the defendants on the issue of whether Belk's termination was lawful.

---

**2.** Belk also requested additional compensation from the Board in the event that it expected her to instruct the new Town Clerk in her duties and responsibilities. The Board refused the request.

**3.** It is unclear to whom Belk would have directed such a grievance.

Belk raises two arguments on appeal. She contends that the first amendment establishes an absolute right to petition the government for a redress of grievances which was violated when the Board fired her as a direct consequence of her threat to appeal the Board's decision not to reclassify the job of Town Secretary. Alternatively, Belk argues that even if no such absolutely protected right exists, the content of her threatened grievance was constitutionally protected. Thus, the Board's order dismissing her was an impermissible retaliation for the threatened exercise of her constitutional right. It is Belk's specific contention that the Board's decision to terminate her was motivated by the fear that a formal reconsideration of its adverse decision would bring to light more fully the Board's "deceit" of the townspeople concerning the compensation scheme for the Clerk/Secretary position(s). Furthermore, the attending publicity would also have exposed the fact that the occupancy of those offices by the same person violated a Wisconsin statute, the existence of which Belk had disclosed to at least one Board member prior to her 1985 election defeat. We will consider these arguments in turn.

## II.

Because Belk is appealing from a grant of summary judgment to the defendants, we must draw all reasonable inferences from the record in her favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988). Where, as here, there are no genuine issues of material fact requiring a trial, our role is limited to determining whether the district court properly held that the party seeking summary judgment was entitled to prevail as a matter of law. *See, e.g., E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 354 (7th Cir.1988); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). We make this determination *de novo*.

■ Neither the Supreme Court nor this court has ever directly addressed Belk's first claim—that the first amendment confers upon public employees what amounts to an absolute right, divorced from any consideration of content, to file employment-related grievances.[4] However, while the roots of the petition clause extend deep into our constitutional history, the freedom to petition the government for redress of grievances is but one of several fundamental freedoms protected by the first amendment. The Supreme Court recently underscored this truism in *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), in which the Court flatly rejected the proposition that the petition clause provided absolute immunity from damages for libel. Disagreeing with the notion that the petition clause either can or should be considered in isolation, the Court stated:

> To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable and there is no sound basis for granting greater constitutional protection to statements made in a petition ... than other first amendment expressions.

*Id.* at 485, 105 S.Ct. at 2791 (citations omitted). Were we to adopt Belk's position that the right to petition is absolute, we would be guilty of implementing precisely the sort of hierarchy of first amendment rights forbidden by *McDonald*.

In the leading case of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court held that the right to free speech protected by the first amendment is not violated by an employer who retaliates against a public employee for exercising that right, unless the employee's speech addressed a matter of pub-

---

**4.** In relevant part, the first amendment of the Constitution provides:

Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances.

lic concern. *Id.* at 147, 103 S.Ct. at 1690. Notwithstanding the central importance *Connick* attaches to the content of a public employee's speech, Belk asks us to accord absolute first amendment protection, without regard to content, to *any* grievance a public employee files or threatens to file. Not only is there no legal or historical precedent for such a stratification of first amendment freedoms, as *McDonald* suggests, but such special treatment of the right to petition would unjustly favor those who through foresight or mere fortuity present their speech as a grievance rather than in some other form. Accordingly, we decline to hold as a matter of law that the fact that the Town Board may have terminated Belk in retaliation for threatening to file a grievance constitutes a *per se* violation of the first amendment.

Because Belk was an "at will" employee, the Town Board could have terminated Belk's employment at any time, and for any reason or for no reason at all. The Town could not, however, terminate her employment because of her exercise or threatened exercise of a constitutionally protected right. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Thus, only if the substance of Belk's threatened grievance is deserving of first amendment protection does her allegedly retaliatory discharge violate the petition clause.[5]

■ The first step in such an inquiry is to ascertain whether the asserted speech touches upon a matter of public concern. *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. Only if the speech at issue, in this case an employment grievance, passes this first hurdle must a court then employ a balancing test to determine whether, as a matter of law, the speech is constitutionally protected.[6] *See Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed. 2d 811 (1968). The district court concluded that Belk's grievance was not entitled to first amendment protection because it related solely to her personal dissatisfaction with the existing classification of the position of Town Secretary and thus did not address a matter of public concern. Consequently, we are concerned on appeal only with the initial phase of this two-part in-

---

5. The two other circuits that have addressed this issue have also employed this approach in analyzing a public employee's right to petition the government. In *Day v. South Park Indep. School Dist.,* 768 F.2d 696 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986), a teacher filed a grievance seeking review of an unfavorable evaluation. After the evaluation was determined to be non-grievable, and after the teacher was denied other relief, she learned that her contract with the school district had not been renewed. Despite a finding by the district court that the teacher had been fired because she filed the grievance, the court concluded that the right to redress of grievances is "so dovetailed into" the question of whether the substance of the grievance is protected speech that it could not separate the two issues. Having found that the teacher's speech concerned a purely private matter—her unfavorable evaluation—the court granted a directed verdict in favor of the defendants.

Affirming the district court, the Fifth Circuit held:

> None of the Supreme Court cases cited by [the teacher] supports the proposition that her speech on a matter of personal concern, the act of an employee addressing her employment supervisors, is protected by the petition clause because she chose to clothe her address to them in a formal grievance, in the absence of any implication of the right to freely assemble or associate. Other decisions that rest in part on the right-to-petition clause involve the exercise of first amendment rights in addition to the right to petition.

*Id.* at 701. The Eleventh Circuit reached the same result in *Renfroe v. Kirkpatrick,* 722 F.2d 714 (11th Cir), *cert. denied,* 469 U.S. 823, 105 S.Ct. 98, 83 L.Ed.2d 44 (1984) (in order to be protected speech, a public employee's grievance must touch upon matters of public concern). *See also Santella v. Grishaber,* 654 F.Supp. 428 (N.D.Ill.1987) (plaintiff failed to state first amendment claim because grievance was not related to a matter of public concern).

6. Should the outcome of this balancing test lead to the conclusion that the public employee's speech is constitutionally protected, two issues of fact must then be addressed. The first is whether the employer's actions were in fact motivated by the employee's constitutionally protected speech. If the employee can demonstrate that his protected speech was a substantial or motivating factor in the employer's decision, the employer is then permitted an opportunity to prove that it would have taken the same action in the absence of the employee's exercise of his first amendment rights. *See Vukadinovich v. Bartels,* 853 F.2d 1387, 1389–90 (7th Cir.1988) (citing *Hesse v. Bd. of Educ.,* 848 F.2d 748, 754 (7th Cir.1988) (Flaum, J., dissenting)).

quiry—whether Belk's grievance related to a matter of public concern.

In *Connick,* the Supreme Court articulated the following and by now well-established test: "whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the record as a whole." 461 U.S. at 147–48, 103 S.Ct. at 1690. *See also Vukadinovich v. Bartels,* 853 F.2d 1387, 1390 (7th Cir.1988). The plaintiff in *Connick,* an assistant district attorney named Myers, strongly opposed a proposed reassignment that would have transferred her from one section of the local criminal court to another. After expressing her opposition to the move to several of her supervisors, including defendant Connick, (the District Attorney of New Orleans parish), Myers prepared a questionnaire which she distributed to other assistants in the district attorney's office. The questionnaire contained questions concerning the office transfer policy, office morale, the need for a formal grievance committee, the level of confidence in office supervisors, and whether assistants felt pressured to work in political campaigns. Immediately after Myers distributed the survey, she was notified that she was being fired for her refusal to accept the proposed transfer and that dissemination of the questionnaire was considered an act of insubordination. Myers filed suit under 42 U.S.C. § 1983 contending that she had been wrongfully terminated because she had exercised her constitutional right of free speech.

The Supreme Court found that all but one of the 14 questions propounded by Myers' survey did not fall under "the rubric of matters of 'public concern,'" but were instead mere extensions of her dispute over the proposed transfer. *Id.* 461

U.S. at 148, 103 S.Ct. at 1690. In the Court's words, "the questionnaire, if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo." *Id.* Nevertheless, the presence of a single survey question touching upon a matter of public concern (whether assistants felt pressured to work on political campaigns) triggered the second part of the constitutional inquiry—the *Pickering* balance—during which Myers' right to speak out on matters of public concern was balanced against her employer's interest in promoting the efficiency of the public services it performs. *See Pickering,* 391 U.S. at 572–73, 88 S.Ct. at 1736–37. Only after performing this balancing test did the Court ultimately conclude that the District Attorney's interest in maintaining office discipline, morale, and efficiency outweighed Myers' right to speak out freely on even matters of genuine public interest.

The "content, form and context" of Belk's threatened appeal of the Board's decision would have revealed not only that the Town Board had been paying more compensation to the incumbent Clerk/Secretary than the residents of Minocqua had authorized, but also that the occupancy of those two offices by the same individual was proscribed by a state statute. Applying the test articulated in *Connick,* we conclude that these issues constitute matters of public concern. *Cf. Knapp v. Whitaker,* 757 F.2d 827, 840 (7th Cir. 1985) (charges of inequitable allocation of public funds implicate matters of substantial public importance).[7] In finding that Belk's speech did not relate to a matter of public concern, the district court focused exclusively upon her "purpose" in complaining about the compensation and hours

---

**7.** "Matters of public concern" are rarely so easily discerned. Issues which may be of great personal significance do not always assume a larger, public dimension. In this connection, plaintiffs contemplating suits like this one would do well to consider the following observation:

In assessing whether the speech touches upon a matter of public concern, it is important not to equate the public's curiosity about a matter

with the matter having societal ramifications. People may be interested in any number of aspects of the lives of public officials and employees, but that does not mean that such matters have societal ramifications. Conversely, the public may be extremely apathetic about certain matters of public concern.... *Egger v. Phillips,* 710 F.2d 292, 316–17 (7th Cir. 1983) *(en banc).*

associated with the Secretary's position. As we recently observed, however:

Although the point or motive behind an employee's speech is relevant in determining whether matters of public concern are implicated by that speech, motive alone is not dispositive. A fair reading of *Connick* simply will not support the use of such a litmus test. Despite the Court's explicit finding that Myers's questionnaire was motivated by a personal dispute, the content of her speech was paramount to the Court's finding that a public issue was implicated. *This court also has recognized that content is the greatest single factor in the Connick inquiry.*

*Berg v. Hunter,* 854 F.2d 238, 242-43 (7th Cir.1988) (citations omitted) (emphasis added). *See also Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984). *But cf. Hesse,* 848 F.2d at 752 (quoting *Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir.1987) and *Linhart v. Glatfelter,* 771 F.2d 1004, 1010 (7th Cir.1985) (*Connick* "requires us to look at the *point* of the speech in question: Was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern because they are of public concern?")). As was true of Myers' survey in *Connick,* Belk's allegations are bound up in a personal dispute with her employer. Similarly, just as Myers' questionnaire raised an issue of public concern, the substance of Belk's threatened grievance undeniably relates to matters of concern to the public.

We readily admit to a certain uneasiness in furnishing litigants like Belk, who were at one time direct but silent beneficiaries of the very wrongdoing they now seek to expose, constitutional protection from adverse employment action when there is a sense that their sudden outspokenness is not the product of conscience or altruism but instead of self-interest. At the same time, however, we must recognize that:

[e]mployees who have no disagreements with the manner in which an institution is run are unlikely to see any problems in need of public attention. As a result, these types of first amendment cases typically involve disgruntled employees.

If employees are automatically denied first amendment protection simply because they are involved in some type of dispute with their employer, serious issues of public concern will never be brought to light.

*Hesse,* 848 F.2d 748, 758 (7th Cir.1988) (Flaum, J., dissenting) (citation omitted). In the instant case, Belk has shown only that her speech related to issues of public concern; whether her speech is constitutionally protected, whether it was a motivating factor in her dismissal, or whether she would have been terminated in any event are all questions which, if reached, must be answered before she is entitled to relief. *See supra* n. 5.

### III.

The district court erred in concluding that Belk's threatened grievance did not touch upon matters of public concern. The decision is therefore REVERSED, and this cause is REMANDED for further proceedings.