JUDITH A. CARON *vs.* EDWARD SILVIA & another.[1]

No. 90-P-1051.

Bristol. January 15, 1992. - March 23, 1992.

Present: BROWN, FINE, & IRELAND, JJ.

*Constitutional Law*, Freedom of speech and press. *Civil Rights,* Immunity of public official. *Public Employment*, Termination.

In an action by a former State employee alleging that she had been discharged from her position in violation of the rights secured her by the First Amendment to the United States Constitution, the record in summary judgment proceedings showed that the plaintiff, by appearing on certain television programs, had exercised a clearly established constitutional right to speak on a matter of public concern, namely, her agency's policy restricting cigarette smoking in the workplace; consequently, it was error to allow summary judgment in favor of her two supervisors on the ground that they enjoyed a qualified immunity from liability on the plaintiff's claim under State and Federal civil rights acts. [273-277]

CIVIL ACTION commenced in the Superior Court Department on May 26, 1988.

The case was heard by *William H. Carey*, J., on a motion for summary judgment.

*David J. Luff* for the plaintiff.

*William W. Porter*, Assistant Attorney General, for the defendants.

FINE, J. Judith Caron is a cigarette smoker. From 1980 until she was fired in 1988, she was employed as a social worker in the Attleboro office of the Department of Public Welfare (department). Caron's smoking in the workplace was a source of controversy with her supervisors. Because of

---

[1]Leonard Aiello. Silvia and Aiello are both named individually and as the director and assistant director, respectively, of the Attleboro area office of the Department of Public Welfare.

the controversy and the attention it attracted, she was invited in late 1987 to appear on a national television program, "60 Minutes," and in early 1988 on two local television talk shows. Soon after those appearances, ostensibly on grounds of insubordination, her employment was terminated.[2]

Caron filed a complaint containing numerous counts against three individuals, two of whom were her supervisors. Ruling on a motion filed by the defendants, a Superior Court judge dismissed several counts of the complaint and granted summary judgment for the defendants on the others. Only one issue is raised on appeal: whether summary judgment was properly granted in favor of Caron's two supervisors, named as defendants individually, on her claim under the Federal (42 U.S.C. § 1983 [1988]) and State (G. L. c. 12, §§ 11H and 11I [1988 ed.]) Civil Rights Acts[3] that by bringing about Caron's discharge the defendants interfered with her right to free speech under the First Amendment to the Federal Constitution. It is Caron's contention that the defendants' allegation, which resulted in her discharge, that she was insubordinate in insisting on tape recording a meeting, was a pretext. The motion judge ruled that, whatever the real reason for Caron's discharge, because she had failed to show that she had a clearly established constitutional right to speak on the office's smoking policy, the defendants were entitled to a defense of qualified immunity from liability, and judgment was entered in their favor.

---

[2]Caron appeared with counsel at a hearing before a designee of the Commissioner of Public Welfare on January 19, 1988. The hearing officer found insubordination amounting to just cause for Caron's discharge based upon her refusal to appear at a meeting about her work performance unless she was allowed to tape record the meeting. The Commissioner accepted that finding.

[3]The State Civil Rights Act claim was based upon allegations that the defendants, by threats, interfered with Caron's rights to tape record a meeting, to smoke in the workplace, and "to speak out critically in public." The judge actually dismissed the claim under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Only the free speech aspect of the claim is argued on appeal. The issue is the same as the one raised by the Federal Civil Rights Act claim, and the judge's decision involved consideration of the affidavits. Therefore, we treat the judge's order as to the speech portion of the State claim as one ordering summary judgment.

The judge correctly set forth the scope of immunity protecting the defendants, sued as individuals, for discretionary acts they performed as government employees. Caron was obliged to show that the defendants deprived her of a "clearly established" right, that is, one, not in the abstract but based upon particular circumstances, of which a reasonable person would have been aware at the time. See *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson* v. *Creighton*, 483 U.S. 635, 638-639 (1987); *Duarte* v. *Healy*, 405 Mass. 43, 46-47 (1989). To overcome a claim of immunity, it is not necessary for the courts to have previously considered a particular situation identical to the one faced by the government official. See *Anderson* v. *Creighton*, 483 U.S. at 639-640; *Hall* v. *Ochs*, 817 F.2d 920, 924-925 (1st Cir. 1987); *Dobos* v. *Driscoll*, 404 Mass. 634, 646-647, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). "It is enough, rather, that there existed case law sufficient to clearly establish that, if a court *were* presented with such a situation, the court would find that the plaintiff's rights were violated." *Hall* v. *Ochs*, 817 F.2d at 925 (emphasis in original). Consistent with the reasons underlying the qualified immunity defense, it was important that the immunity issue be resolved at the earliest possible stage of litigation, preferably before any discovery, on a motion to dismiss or for summary judgment. See *Harlow* v. *Fitzerald*, 457 U.S. at 818; *Anderson* v. *Creighton*, 483 U.S. at 646 n.6; *Mitchell* v. *Forsyth*, 472 U.S. 511, 526-527 (1985).

To determine whether the defendants may have violated clearly established law in this case, we are required to examine Caron's claim, on the basis of the factual material presented to the motion judge, that she was discharged for exercising her First Amendment rights.[4] Some, but not all, of

[4]Caron properly does not contend that the Massachusetts Constitution affords her broader rights to free speech than the United States Constitution. See *Colo* v. *Treasurer & Recr. Gen.*, 378 Mass. 550, 558 (1979); *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. 545, 552 (1991). Nor does she contend that the Massachusetts Civil Rights Act would afford her greater rights in the present situation than does the Federal Civil Rights Act.

a public employee's speech is constitutionally protected. To establish that her discharge was in violation of her First Amendment rights, Caron had to show, among other things,[5] that her speech addressed a matter of public concern and not merely her personal interests or internal office grievances. See *Connick* v. *Myers*, 461 U.S. 138, 146-147 (1983); *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. 545, 552 (1991). The question whether particular speech touches upon a matter of public concern is one of law and must be answered in each case on the basis of the "content, form, and context" of the speech as revealed by the whole record. *Connick* v. *Myers*, 461 U.S. at 147-148. The reported cases form a spectrum falling on both sides of the line. For example, compare *Jett* v. *Dallas Indep. Sch. Dist.*, 798 F.2d 748, 757-758 (5th Cir. 1986); *Belk* v. *Minocqua*, 858 F.2d 1258, 1263-1264 (7th Cir. 1988); *Boger* v. *Wayne County*, 950 F.2d 316, 322-323 (6th Cir. 1991), with *Zaky* v. *United States Veterans Admn.*, 793 F.2d 832, 838-839 (7th Cir. 1986); *Koch* v. *Hutchinson*, 847 F.2d 1436, 1443-1449 (10th Cir. 1988); *Vukadinovich* v. *Bartels*, 853 F.2d 1387, 1391 (7th Cir. 1988).

It is clear from the affidavits filed by all parties that for some time before her television appearances Caron had felt aggrieved by her treatment as a smoker in her particular workplace. The rights of smokers in the department's Attleboro office had been the subject of litigation, and Caron had intervened as a party. Subsequently, the department instituted a State-wide policy concerning smoking which restricted her rights. Caron stated in her affidavit that she "complained to anyone who would listen" about the office policy, that she "became increasingly vocal about [her] treatment as a smoker," and that she began "to attract media

---

[5]If the speech is determined to address a matter of public concern, two issues would remain: whether the interests of the employee in making the statement outweigh the State's interest as employer in promoting efficient performance of its employees, *Pickering* v. *Board of Educ.*, 391 U.S. 563, 568 (1968); and whether the employee's speech was a substantial factor motivating the defendants to effectuate her discharge, *Mount Healthy City Sch. Dist. Bd. of Educ.* v. *Doyle*, 429 U.S. 274, 287 (1977).

notoriety." She stated, further, that in June of 1987, "60 Minutes" became interested in doing a feature on her, and she appeared on the program. In the fall of 1987, according to her affidavit, she was "invited to appear on two Boston television talk programs on smokers' rights."

The affidavits informed the motion judge adequately of the context of Caron's speech. Caron's televised remarks were made in the context of a long-standing internal office dispute. As to the content of the speech, Caron stated only that she was "invited" to appear on television programs "on smokers' rights."

Some knowledge of content is important in determining whether a person's speech relates to a matter of public concern. It would not have been enough that Caron's comments related to the department, an important public agency, as there is no indication that the comments suggested that the agency was not properly performing its responsibilities to the public, compare *Roth* v. *Veteran's Admn.*, 856 F.2d 1401, 1406 (9th Cir. 1988), or that the agency was deficient in a matter about which the public might be concerned, such as engaging in a pattern of unlawful discrimination, compare *Matulin* v. *Lodi*, 862 F.2d 609, 612-613 (6th Cir. 1988). On the other hand, the issue of smoking in public places has been the subject of legislation in Massachusetts, see G. L. c. 270, §§ 21 and 22, and there certainly has been considerable public debate about the dangers of smoking both to smokers and others in their immediate vicinity and the extent to which smoking should be tolerated in public places. Caron would not be disqualified from First Amendment protection merely because she had a personal stake in the controversy. The question is whether her television appearances were related to both her personal concerns and the broader issue of smoking policies in general.

We think her statement that she was "invited" to appear on programs "on smokers' rights," particularly in light of the form of those appearances, is sufficient to create an inference that she was addressing more than her own personal concerns. As to the forum in which Caron expressed herself, we

think it significant that she was solicited on three separate occasions by producers of television programs, one a well-known national program which presents issues of interest to the public. The invitations were all made in connection with the issue of the rights of smokers in the workplace. It seems most unlikely that her repeated appearances on such television programs would have been related exclusively to her personal grievances. See *Rode* v. *Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988); *Moore* v. *Kilgore*, 877 F.2d 364, 371-372 (5th Cir. 1989); *Broderick* v. *Roache*, 767 F. Supp. 20, 24-25 (D. Mass. 1991).[6] This is so even though we recognize that the fact that Caron's views, or her situation, happened to attract media attention may not be enough by itself to qualify her remarks as expressions on a matter of public interest. See *Connick* v. *Myers*, 461 U.S. at 160 n.2 (Brennan, J., dissenting); *Vukadinovich* v. *Bartels*, 853 F.2d at 1391; *Koch* v. *Hutchinson*, 847 F.2d at 1448.

The question remains whether the defendants are immune from suit. The right of public employees not to be fired in retaliation for speaking on matters of public concern has been established since at least 1968, see *Pickering* v. *Board of Educ.*, 391 U.S. 563, 568 (1968), and was affirmed in *Connick* v. *Myers*, 461 U.S. at 154, in 1983. Contrast *Duarte* v. *Healy*, 405 Mass. at 49, in which the rights of probationary fire fighter recruits with respect to a drug testing policy were held to be *not* clearly established. Considering the record as a whole, particularly the forum in which Caron expressed herself, we conclude that, at least for purposes of summary judgment, it was "clearly established" that Caron's expression had sufficiently addressed a public issue to entitle

---

[6]Caron stated in her affidavit that before she appeared on "60 Minutes" she was told by a supervisor, not one of the two defendants involved in this appeal: "The Commissioner will be very unhappy if you do this segment on '60 Minutes.' He has a long memory." Caron makes similar but vague references in her affidavit to threats by the defendants. She states: "When the defendants discovered that I was to appear on these [Boston television] programs, attempts were made to keep me off them by denying me time away from my job, to which I was entitled, and for which, in one instance, I had received prior written approval." Compare *Kolodziej* v. *Smith*, 412 Mass. 215 (1992).

her to First Amendment protection. Accordingly, the judgments entered on the four counts of the complaint alleging violations of the State and Federal Civil Rights statutes (counts 2, 3, 4, and 5) are vacated, and the case is remanded to the Superior Court for further proceedings on the remaining issues in the case.

*So ordered.*

BROWN, J. (concurring). Although I fully agree with the careful and sound treatment of this matter by the majority, I believe that the same result could be reached more directly. I am of opinion that the plaintiff's affidavit, cited by the majority in note 6 at 276, is sufficient to raise an issue of material fact as to whether the alleged actions of the defendants and certain of their colleagues (e.g., another supervisor) were threatening and were intended to intimidate or coerce the plaintiff to refrain from exercising her rights to free speech under the Federal and State Constitutions. See *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 821, 822-823 (1985). This most certainly is a jury question at this stage of the proceedings.

The plaintiff must be afforded the opportunity to establish that the remarks attributed to the defendants were substantially accurate, and that their clear implications accurately reflected their state of mind. The granting of summary judgment in such cases "is disfavored." *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991).

The abuse of power by public officials over their subordinates — whether by intimidation and coercion either to engage in improper conduct or, as alleged here, to refrain from exercising rights — must be extirpated. It is in this area that the courts, which are often the final forum to which victims of such abuse can turn, must act with particular care to find the truth. No conduct strikes me as being more coercive than for a government official, one vested with the public trust, to exercise his powers in the abusive manner here alleged. This

would seem to be particularly egregious in this context where it was intended to chill the free speech rights of a subordinate.