NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2020[*]
Decided September 15, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1728

| | |
|---|---|
| ERIC CONNER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 19-cv-921-bbc |
| | |
| HEATHER SCHWENN, et al., | Barbara B. Crabb, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Eric Conner sued officials at the Wisconsin Secure Program Facility in Boscobel to challenge his assignment to administrative confinement. He raises claims about due process, retaliation, conditions of confinement, and equal protection. The district court correctly ruled that Conner failed to state a claim under these theories, and it reasonably severed an unrelated claim about his medical care, so we affirm.

---

[*] We have agreed to decide the case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Conner alleges that he first went to administrative confinement in 2015, when officials discovered him with a weapon. Administrative confinement is an involuntary, "non-punitive" status that isolates inmates who pose a serious threat to themselves, other inmates, staff, property, or the institution. WIS. STAT. § DOC 308.04(1). In this status, Conner may leave his cell to exercise one hour each day. When out of his cell, he and other inmates share a communal pull-up bar and outdoor clothing. He does not receive sanitizer or weightlifting gloves to cleanse contact with the exercise equipment or shared clothing. Because he has open scars on his head and neck, Conner fears that this situation puts him at risk of serious illness, but he has contracted none. In 2016, he returned to the general population briefly, but he committed another infraction, and prison officials placed him back in segregation. Conner does not challenge either of these decisions to transfer him to segregation. He remains there now, where he is participating in a multi-step program that, over time, will reduce restrictions on his interactions with other inmates.

About every six months, the prison decides whether it should exercise its discretion to release Conner from segregation; Conner contests a decision in 2019 to keep him there. In April, a lieutenant recommended that, based on a misconduct report, Conner stay in segregation. A few days earlier, Conner had filed a grievance alleging that Heather Schwenn, a psychologist, threatened to demote him in the multi-step program if he refused to talk about his mental health. The warden, who Conner alleges knew that he had filed this grievance, appointed Schwenn and two others to the panel that would decide whether Conner stayed in segregation. Conner objected to the warden's inclusion of Schwenn on the panel because, he feared, she would bias the panel against him. But another panel member decided that Schwenn would remain on it. At the hearing, the panel received the misconduct report; it did not hear from Conner or his witnesses. Afterward, it voted to use its discretion to keep him in segregation for another six months, a decision he unsuccessfully appealed internally.

In this suit, Conner raises four claims (other than the one that the district court severed). First, he alleges, the "perfunctory" procedure that officials used to keep him in administrative confinement—no witnesses and Schwenn on the panel—denied him due process. Second, he alleges that Schwenn and the panel retaliated against him for filing a grievance by voting to keep him in segregation. Third, Conner alleges, the committee violated his right to equal protection under the "class-of-one" theory by keeping him in segregation longer than inmates with more serious infractions. Fourth, Conner alleges that his conditions of segregation—the risk of infection to his open wounds from using uncleaned, shared equipment and clothing—violate the Eighth Amendment.

The district court screened the suit under 28 U.S.C. § 1915A and dismissed it. It ruled that, by deciding merely to retain Conner's status in administrative confinement, the defendants committed no due process violations. The retaliation and equal-protection claims failed, the court reasoned, because the alleged causal link between Conner's grievance and the panel's adverse vote was "speculation." Finally, the court ruled that the conditions of segregation did not violate the Eighth Amendment because Conner alleged only mere discomfort about clothing and sanitation.

On appeal, Conner first challenges the conclusion that he did not sufficiently allege an Eighth Amendment violation. To state a valid deliberate-indifference claim, Conner needed to allege that that the defendants knew about, but disregarded, a serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Conner contends that, because he shares outdoor clothing and lacks a sanitizer for cleaning, he (with his open scars) is exposed to possible infections. But this contention fails for three reasons. First, he asserts only the mere possibility of infection—he has not alleged that the risk is substantial, much less that he was actually injured by that risk. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). Second, Conner does not allege that the defendants—he sues the warden, deputy warden, security director, and two officers—even knew about his scars, much less ignored the risk of their infections. Thus, he has not alleged facts that would show deliberate indifference. Third, although a plaintiff might cure defects like these with an amended complaint, *see Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1025 (7th Cir. 2013), Conner has not asked, either in the district court or here, to add to his allegations. So his omissions are fatal to his claim.

We next consider Conner's claim that prison officials used deficient procedures during the hearing that the panel used to decide not to release him from segregation. A prisoner is entitled to due process before he loses liberty through a transfer from the general population to atypically harsh confinement, like segregation. *See Sandin v. Conner*, 515 U.S. 472, 485–86 (1995). But Conner has not challenged his loss of liberty from either of his two transfers to segregation. Rather, he contests his failure to gain some liberty by returning to the general population from segregation. But because that decision was discretionary, due process did not constrain its exercise. *See Board of Pardons v. Allen*, 482 U.S. 369, 375 (1987).

We also affirm the dismissal of Conner's claim of retaliation under the First Amendment. To state a valid claim, Conner must allege that prison officials treated him

materially adversely because of his constitutionally protected speech. *See Gomez v. Randle*, 680 F.3d 859, 866–67 (7th Cir. 2012); *see also Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Conner fears that Schwenn biased the panel to vote to keep him in segregation because he had filed a grievance against her for requiring that he discuss his mental health. We may assume that, as the district court ruled, Conner's grievance was protected speech, *see Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015), and that significant, additional time in segregation is adverse enough to "likely deter First Amendment activity in the future." *Bridges*, 557 F.3d at 546. This claim fails, however, because, as the district court also correctly ruled, Conner's allegation that his grievance caused the adverse decision vote is implausibly speculative. Conner has alleged only that the warden knew about his grievance and that another panel member decided, over Conner's objection, to retain Schwenn on the panel. But he did not allege in his complaint that Schwenn herself learned of his grievance before the panel voted and became hostile to him because of it. Thus, his fear that she pressured the panel to vote against his release because of his grievance is indeed speculation. (On appeal, Conner asserts for the first time that at some point Schwenn criticized Conner for filing his grievance, but he omits telling us when, in relation to the panel's vote, she did so.)

We similarly reject Conner's equal-protection claim. Conner argues that, because his time in segregation has been longer than inmates with worse records, the prison has violated his equal-protection rights under a class-of-one theory. To state a class-of-one claim, Conner must allege that the defendants singled him out arbitrarily, without rational basis, for unequal treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). Some highly discretionary decisions are so individualized that the class-of-one theory does not apply to them. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008) (employment decisions). Even though prison housing assignments involve discretion, *see Hewitt v. Helms*, 459 U.S. 460, 467–68 (1983), we need not decide if the segregation assignment here involved the kind of discretion that *Engquist* contemplated, because this claim fails for another reason. Conner alleges that the reason the defendants confined him longer than others was to punish him for filing a grievance. But that is merely a restatement of the First Amendment claim, which we have ruled is deficient. Because litigants should use the part of the Constitution that most directly addresses their concerns, *Graham v. Connor*, 490 U.S. 386, 395 (1989), and because that provision— the First Amendment—does not provide relief, the more general equal-protection claim must likewise fail. *See Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988) (dismissing equal protection claim that constituted "a mere rewording of plaintiff's First Amendment-retaliation claim").

Finally, we affirm the district court's decision to sever Conner's medical-care allegations. The medical care that Conner received involves a different set of facts and standards than his claims about his administrative confinement. Thus it was reasonable for the district court to sever that claim from this suit. *See* FED. R. CIV. P. 20, 21.

AFFIRMED