AMY WHITE & another[1] *vs.* RICK GURNON & others.[2]

No. 04-P-1431.

Middlesex. December 16, 2005. - October 30, 2006.

Present: LAURENCE, ARMSTRONG, & KANTROWITZ, JJ.

*Constitutional Law,* Sex discrimination, Education, Privileges and immunities. *School and School Committee,* Liability for tort. *Civil Rights,* Immunity of public official, Supervisory liability.

In an action brought pursuant to 42 U.S.C. § 1983 by two female students at a State maritime academy who were sexually harassed by male cadets, a Superior Court judge erred in denying summary judgment based on a defense of qualified immunity to the defendant, the academy's commandant, where, although the plaintiffs offered proof sufficient to permit a reasonable trier of fact to infer that the commandant acted with deliberate indifference toward the cadets' sexual misconduct [628-631], the plaintiffs, at the relevant time, had no clearly established right to hold a school official liable under § 1983 for failing to take action to remedy known student-on-student sexual harassment [631-635].

CIVIL ACTIONS commenced in the Superior Court Department on November 3, 1999, and October 31, 2000, respectively.

After consolidation, a motion for partial summary judgment was heard by *Nonnie S. Burnes,* J.

A proceeding for interlocutory review was heard in the Appeals Court by *Perretta,* J.

*Matthew Q. Berge,* Assistant Attorney General, for Rick Gurnon & others.

*Gerald F. Blair (Corey C. Shaw* with him) for the plaintiffs.

[1]Susan Smith. The plaintiffs' names are pseudonyms.

[2]Massachusetts Maritime Academy and its board of trustees; the board of trustees of the State colleges; the board of higher education; Maurice J. Bresnahan, Jr.; Roy A. Fulgeras; Patrick J. George; Francis L. Marchant; and Luis A. Cumare. The claims against these defendants are not before us in this appeal. See note 24, *infra.*

ARMSTRONG, J. This appeal arises from two consolidated actions that were filed in Superior Court. In each case, a former female cadet at the Massachusetts Maritime Academy (school), a State college in Bourne, sought damages for having suffered sexual harassment by male cadets. Among the claims raised against the school, its board of trustees, and certain individual school officials, the plaintiffs alleged a violation of their right to equal protection of the laws, as is guaranteed by the Fourteenth Amendment to the Federal Constitution, and actionable under 42 U.S.C. § 1983 (2000) (§ 1983).[3]

This appeal concerns the plaintiffs' § 1983 equal protection based claim against Captain Rick Gurnon personally, as he was then commandant at the school. In that position he had the chief supervisory responsibility for all cadets and subordinates in the school's "chain of command." He was, in essence, the final authority on all matters relating to cadet misconduct.

For purposes of the § 1983 claim, the plaintiffs assert that Gurnon condoned or acquiesced in the harassment by male cadets. They claim that Gurnon's inaction is "affirmatively linked" to the complained-of harassment. This link, the plaintiffs argue, provides a basis for imposing liability on Gurnon for violating their constitutional rights, thus depriving them of educational opportunities at the school.

Gurnon raised a defense based on the doctrine of qualified immunity. Qualified immunity is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, the privilege is lost if a case is erroneously set down for a trial. *Saucier* v. *Katz*, 533 U.S. 194, 200-201 (2001). See *Clancy* v. *McCabe*, 441 Mass. 311, 317 (2004).

Gurnon brings this interlocutory appeal from the order of the Superior Court judge denying him summary judgment on the § 1983 claim. See *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, 401 Mass. 26, 30-31 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988);

---

[3]Section 1983 provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the [Federal] Constitution and laws, shall be liable to the party injured . . . ."

*Clancy* v. *McCabe*, 441 Mass. at 312. The issue presented is whether, on this record, Gurnon is entitled (as matter of law) to immunity. Before addressing the legal questions raised on appeal, we summarize the proof offered at the summary judgment stage, see Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), in the light most favorable to the plaintiffs.

1. *Background.* The school was founded in 1891 for instruction and training in the science and practice of navigation. The school is owned and operated by the Commonwealth, and is an institution of higher learning within the State college system. Among its educational aims, the school prepares students for service in the merchant marine. During the relevant period the school received Federal education funding.[4]

For the school term starting in August of 1996, Amy White and Susan Smith were first-year cadet candidates at the school. Prior to enrolling, White and Smith (and their parents) made inquiry of school officials whether there had been any prior instances of sexual misconduct perpetrated against female cadets by male cadets. The consistent response of school officials who had occasion to answer such inquiries was that nothing of the sort had ever occurred.[5,6]

At an orientation program in April, 1996, Gurnon spoke to a gathering of prospective cadet candidates. In the course of his talk, Gurnon discussed the school's sexual harassment policy, which he characterized as being one of "zero tolerance." Gurnon is said to have made it clear that the school imposed stern punishment to deter such conduct and that sexual harassment was not tolerated at the school.[7]

Upon commencement of the school term, White and Smith

---

[4]For background as to the school's history and educational mandate, see *United States* v. *Massachusetts Maritime Academy*, 762 F.2d 142 (1985). We do not address the contention, pressed by the plaintiffs, that the school's educational mission had changed in recent years.

[5]The school did not admit female students until the fall term of 1977.

[6]At a deposition, Gurnon admitted there had been at least three instances of a cadet having violated the school's sexual harassment policy prior to 1996. He described some particulars, and in one situation, the accused male cadet-harasser had withdrawn from the school. The plaintiffs allege this material information was deliberately withheld from them.

[7]Similarly, at a female cadet candidate orientation program that took place in July, 1996, at the school, Gurnon is reported to have said to the prospective

White v. Gurnon.

found themselves subjected to verbal abuse by their male peers. Male cadets would routinely and frequently refer to them as "bitches," "whores," "sluts," or other such offensive terms. Both women asked a squad leader to act. The record does not disclose what, if anything, the squad leader did; in any event, the verbal abuse did not stop. White and Smith tried to ignore it; their stoicism did not deter their male peers.

a. *November 7, 1996, incident.* In the early morning hours of November 7, 1996, three male cadets entered the dormitory room that White and Smith shared, doing so under false pretenses. The male cadets falsely represented to White and Smith that a "surprise" inspection was taking place and demanded to be admitted into the room. White and Smith complied. Two of the males who gained access to the room then proceeded to sexually assault the women over more than four hours (1:00 A.M. to 5:30 A.M.).[8] Not until 5:30 A.M., when other cadets within the dormitory had started morning activities, did the two male cadets bring an end to their unwanted sexual assaults and release White and Smith.

Word of the November 7 attack ultimately spread among some cadets. White and Smith reported some details of the incident to a squad leader.[9] It was White's mother, however, who apparently first reported the sexual assaults to a school official. She demanded an immediate audience with Gurnon and other responsible school officials. A meeting took place on November 16 (Saturday); present were White, her mother, Smith, Gurnon, and a school nurse.

White's mother was outraged that the school had not seen fit to take any remedial action in response to this crisis. Among

cadet candidates: "Sexual harassment does not happen here. [We] do not tolerate it." This refrain was echoed by other presenters at this particular program.

[8]Specifically, one cadet forcibly lifted White's nightshirt, ignoring her protests to stop. He groped and bruised her breasts. He removed his own trousers, exposed his penis, and pinned White's body to a wall. He pressed his groin to her face, demanding that she perform oral sex. White tried to fight off his overtures. The other male cadet acted in like fashion toward Smith.

[9]"Squad leaders" and first-year cadet candidates lived on the same dormitory floors, and the former were expected to be available for guidance with school matters or concerns of the given "company" to which cadet candidates were assigned.

other things, she bitterly complained that the school had not provided any counselling or medical services to her daughter or to Smith. Gurnon indicated an investigation was ongoing.[10] He also said he understood why White and Smith might not have made an immediate call for help.

Gurnon offered his home telephone number to White and Smith. He told them that if they were not able to attend class or exercises, each had a "blank check" from him to be excused, and that there would be no negative impact on their course grades. White's mother asked Gurnon how such a horrible incident could have occurred on campus. He allegedly replied, "What did you expect when she is such a pretty girl?"

White's mother made a request that "peep" holes and locks be installed on the women's dormitory door and that security cameras be placed in appropriate locations within the dormitory facility.[11] Gurnon did not reject outright any such request. However, other than installing a "peep" hole and lock on the plaintiffs' dormitory door, no security or safety measure was implemented by the school during the time period in question.

There was discussion about referring White and Smith for treatment at a battered women's clinic located in Hyannis. Neither White nor Smith maintained a car on the campus because school policy forbade it. In the end, the school made no provision for arranging transportation to this clinic, and so far as the record shows, none was ever offered.

b. *Harassment subsequent to November 7 incident.* White and Smith claim that the harassment did not abate after the November 7 incident. Rather, they allege the sexual harassment became more degrading, in terms of the type of abusive conduct and the frequency with which it occurred, after the November 7 incident. They attribute this disturbing trend to the school's indifferent response; their § 1983 claims are based on the sexual harassment that occurred after the November 7 sexual assaults.

In the latter part of November or in early December, 1996,

---

[10]The school conducted an investigation, and the two male cadets were charged with rules violations. The two ultimately withdrew from school without further discipline.

[11]Smith and her parents met separately with Gurnon a day or two later.

White and Smith telephoned Gurnon. The plaintiffs made it known to him that the hostile and intimidating harassment had become more pronounced and threatening since their meeting on November 16. They explained that male cadets not only leered, insulted, and made obscene gestures, but also physically approached them, in close proximity, so as to intimidate. They reported that male cadets occasionally also touched them, typically from behind and by surprise, to shock and frighten them.

White and Smith "begged" Gurnon to take action. They asked him to make an appropriate statement to the students respecting this situation. Gurnon declined. He allegedly added that if White and Smith refrained from talking further about the situation, the problem would go away.

The degrading and intimidating harassment became so severe that White and Smith were fearful to leave their dormitory room either to attend class or to eat at the cafeteria. Friends brought food to them in their room. Harassing conduct such as banging on their dormitory room door and late night telephone calls caused their sleep to be interrupted, forcing them to try to sleep during the daytime hours when male cadets were attending class. At the end of the term, in January, 1997, White withdrew from school. Smith did so in November, 1997.[12]

2. *Proceedings below and standard of review.* In the Superior Court, Gurnon, by a motion for summary judgment, argued that the plaintiffs could not offer sufficient proof to maintain a § 1983 claim.[13] A judge disagreed, ruling that there were disputed issues of fact, thus rendering summary judgment inappropriate. We independently review the challenged ruling denying Gurnon qualified immunity.

Initially, in any qualified immunity inquiry, a judge or reviewing court must consider a fundamental threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show that [the challenged] conduct violated a constitutional [or statutory] right?" *Saucier* v. *Katz,*

---

[12]According to the record before us, Smith allegedly continued to endure sexual harassment during the spring and fall term of 1997, and Gurnon (and others under his charge) refused to take any measure to address the situation.

[13]Gurnon does not dispute that he acted under color of State law.

533 U.S. at 201. See *Nelson* v. *Salem State College*, 446 Mass. 525, 532 (2006).

If so, a court must next determine whether the claimed "right" was "clearly established" by law when the conduct occurred. *Saucier* v. *Katz*, 533 U.S. at 200 ("the requisites of a qualified immunity defense must be considered in proper sequence"). See *Ahearn* v. *Vose*, 64 Mass. App. Ct. 403, 413 (2005). Thus, we must determine whether a reasonable school official, in the position of Gurnon, could have believed his conduct was lawful, based on then-existing law and the information possessed as of the time he acted (or failed to act) in the face of known acts of harassment. *Clancy* v. *McCabe*, 441 Mass. at 317. The determination whether Gurnon should have known that his conduct violated the plaintiffs' constitutional rights is one of law for the court, based on the state of the law in the period from 1996 to 1997. *Ahmad* v. *Department of Correction*, 446 Mass. 479, 484 (2006).

3. *Discussion.* a. *Did the complained-of conduct violate a Federal right?* Permitting conduct in the form of sexual harassment as carried out by a teacher or a student against another student is a form of sex discrimination that can be actionable under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. (2000) (Title IX), and § 1983. See *Gebser* v. *Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-291 (1998) (*Gebser*); *Davis* v. *Monroe County Bd. of Educ.*, 526 U.S. 629, 643 (1999) (*Davis*).

The United States Supreme Court has ruled that a recipient of Federal education funds may be liable in a private damages action based on allegations of known teacher-on-student harassment, see *Gebser*, 524 U.S. at 292, or student-on-student harassment, see *Davis*, 526 U.S. at 654.[14] The Court held that a damages remedy may be imposed against a school board or district, under Title IX, for harm caused by sexual harassment, if it is shown that (a) a school official who had the authority to take corrective measures on behalf of the "recipient" of Federal funding had "actual knowledge" of the alleged discriminatory conduct, and (b) the school official's failure to take reasonably

---

[14]*Gebser* and *Davis* both involved claims under Title IX.

objective remedial measures amounted to "deliberate indifference" to the discriminatory conduct, as appraised by the totality of surrounding circumstances. *Gebser*, 524 U.S. at 290. *Davis*, 526 U.S. at 633. "Deliberate indifference" constitutes sexual discrimination. *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167, 182 (2005).

In *Davis*, the United States Supreme Court stated that a plaintiff must show that the student-on-student sexual harassment "is so severe, pervasive, and objectively offensive, and that [it] so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." 526 U.S. at 651.

The parties here disputed whether Gurnon's conduct could be found to have been deliberately indifferent to discriminatory conduct of male cadets under his watch. " 'Deliberate indifference' is a stringent standard of fault, requiring proof that a [State] actor disregarded a known or obvious consequence of his action." *Clancy* v. *McCabe*, 441 Mass. at 318, quoting from *County Commrs. of Bryan County* v. *Brown*, 520 U.S. 397, 410 (1997).

While no clear bright-line rules exist, there must be, at a minimum, a showing that a given school official (a) "actually knew" of the harassment, (b) had reason to believe the harassment posed a serious risk to a student, and (c) failed to take readily available measures to address the risk, or took measures knowing the same would be ineffective to protect the student, all without excuse or justification.[15] See *Davis*, 526 U.S. at 633, 646-647. See also *Camilo-Robles* v. *Hayos*, 151 F.3d 1, 7 (1st Cir. 1998), cert. denied, 525 U.S. 1105 (1999).

A "deliberate indifference" inquiry typically is a fact-intensive one. See *Canty* v. *Old Rochester Regional Sch. Dist.*, 66 F. Supp. 2d 114, 116-117 (D. Mass. 1999). The standard is not one of mere reasonableness, such as in a negligence case. A court, where appropriate, may decide this question on a motion

---

[15]A premise behind the "deliberate indifference" concept is that a given board or official made a purposeful decision "not to remedy the violation." *Gebser*, 524 U.S. at 290.

for summary judgment or directed verdict. *Davis*, 526 U.S. at 649.[16]

Proof of "deliberate indifference," by itself, does not establish supervisory liability, as is alleged in this case. The plaintiffs allege that Gurnon, based on his *own* acts and inaction, in effect condoned or acquiesced in the sexual harassment carried out by the male cadets; thus, in essence, the plaintiffs assert that Gurnon, by his own conduct, violated their rights. Proof demonstrating an "affirmative link" between a supervisory official's conduct and the challenged harassment satisfies the causation element of the § 1983 claim. *Camilo-Robles* v. *Hoyos*, 151 F.3d at 7.[17] If the proof allows a reasonable inference of such an affirmative link, a supervisory official's conduct may properly be found to have led to the constitutional violation. *Hegarty* v. *Somerset County*, 53 F.3d 1367, 1380 (1st Cir.), cert. denied, 516 U.S. 1029 (1995).

In light of (a) the detailed and particularized complaints by the plaintiffs of sexual harassment, and pointed requests made by them and their parents for the school to implement reasonable safety measures, as had been voiced at the November 16 meeting; (b) evidence of other contemporaneous complaints and requests for help by White and Smith to Gurnon's subordinates;

---

[16]*Gebser* and *Davis* applied a more stringent standard of liability when the victim of sexual harassment was a student rather than an employee. Contrast *Faragher* v. *Boca Raton*, 524 U.S. 775, 807 (1998) (employer may be vicariously liable if it failed to exercise reasonable care to prevent sexually harassing behavior). Though some commentators have urged that there ought to be a convergence of the standard for school and workplace, see Busa, Recent Development, Two Steps Forward, One Step Back: The Supreme Court's Treatment of Teacher-Student Sexual Harassment in Gebser v. Lago Vista Independent School District, 34 Harv. C.R.-C.L. L. Rev. 279, 280 (1999); McClure, Boys Will Be Boys: Peer Sexual Harassment in Schools and the Implications of Davis v. Monroe County Board of Education, 12 Hastings Women's L.J. 95, 119-121 (2001), the United States Supreme Court's adoption of a deliberate indifference standard in the school setting implicitly rejects such a view. The distinction between the two is critical in a qualified immunity inquiry. *Brosseau* v. *Haugen*, 543 U.S. 194, 198 (2004), quoting from *Saucier* v. *Katz*, 533 U.S. at 201 (whether right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition").

[17]"This affirmative connection need not take the form of knowing sanction, but may include tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct." *Camilo-Robles* v. *Hoyos*, 151 F.3d at 7.

and (c) evidence of a telephone conversation between White, Smith, and Gurnon that had occurred after the November 7 incident but before the end of the school term, a fact finder could reasonably disbelieve Gurnon's protestations that he did not know of the harassment of White and Smith, which was happening on his watch, and which posed a serious risk to their safety and ability to have equal access to educational opportunities at the school.

The evidence also indicated that some measures were taken in response to the sexual assaults: there had been an investigation; a "peep" hole and lock were installed on the plaintiffs' dormitory room door; Gurnon provided his home telephone number to plaintiffs; and meetings took place. In contrast, it has not been shown on this record that Gurnon, or others under his charge who had authority to act in matters of cadet misconduct, took any remedial action to address the alleged post-November 7 harassment. Gurnon did nothing, possibly on the assumption the "problem" would "go away." The evidence most favorable to the plaintiffs shows that Gurnon was aware that the problem was in fact not going away.

A school official acts with deliberate indifference if his response to sexual misconduct is clearly unreasonable in light of the known circumstances. On this summary judgment record, viewed in the light most favorable to the plaintiffs, the plaintiffs offered proof sufficient to permit a reasonable trier of fact to infer that Gurnon acted with "deliberate indifference," as that phrase is understood under the law of § 1983.

b. *Was the right clearly established?* The qualified immunity doctrine shields government officials from monetary liability in their personal capacity provided the official's conduct did not violate an individual's rights that were "clearly established" under the Federal Constitution or law. *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818-819 (1982). See *Clancy* v. *McCabe*, 441 Mass. at 322. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson* v. *Creighton*, 483 U.S. 635, 640 (1987). The unlawfulness of the defendant's conduct must be "apparent based on

then existing law." *Shedlock* v. *Department of Correction*, 442 Mass. 844, 859 (2004), quoting from *Harlow* v. *Fitzgerald*, 457 U.S. at 818. The inquiry is an objective one. *Clancy* v. *McCabe*, 441 Mass. at 322-323.

(i) *Title IX.* As discussed above, in *Davis*, 526 U.S. 629, the United States Supreme Court ruled that liability may be imposed upon a Federally-funded school under Title IX, if it is shown on adequate proof that the school responded with deliberate indifference to known student-on-student harassment on school premises.[18]

Prior to *Davis*, lower Federal courts had been divided on the question whether a Federally-funded school might be subject to liability for having failed to implement objectively reasonable measures to address student-on-student sexual harassment.[19] Some Federal Circuit Courts of Appeal had rejected the imposition of liability, *Rowinsky* v. *Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1016 (5th Cir. 1996); *Davis* v. *Monroe County Bd. of Educ.*, 120 F.3d 1390, 1395 (11th Cir. 1997) (en banc), while others, including the Ninth Circuit, in *Oona, R.-S.-* v. *McCaffrey*, 143 F.3d 473 (9th Cir. 1998), cert. denied, 526 U.S. 1154 (1999),

---

[18]Title IX prohibits discrimination on the basis of sex in educational programs and activities that receive Federal funds. *Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. at 173. Under Title IX, there is an implied private right of action in favor of individuals to bring a lawsuit against a school or educational institution for violating the provisions of Title IX. See, e.g., *Cannon* v. *University of Chicago*, 441 U.S. 677, 717 (1979). Only a recipient of Federal funds — the educational entity itself — can be sued under Title IX, and not individual officers.

The defendants contend that the school is exempt from Title IX's coverage, relying on 20 U.S.C. § 1681(a)(1)(4) ("this section shall not apply to an educational institution whose primary purpose is the training of individuals for military services of the United States, or the merchant marine"). See 46 C.F.R. §§ 310.1-310.3. In *United States* v. *Massachusetts Maritime Academy*, 762 F.2d 142, 147-149 (1st Cir. 1985), the United States Court of Appeals for the First Circuit addressed the school's exemption from Title IX. Because this issue is not before us in this appeal, we do not take up the plaintiffs' challenge to the applicability of any exemption of the school from Title IX.

[19]The United States Supreme Court granted certiorari in *Davis* "in order to resolve a conflict in the Circuits over whether, and under what circumstances, a recipient of federal education funds can be liable in a private damages action arising from student-on-student harassment." 526 U.S. at 637-638. We note that four justices dissented from the *Davis* decision.

ruled that a school board might be held liable for failing to remedy a known hostile environment.[20]

There was a Federal District Court decision — *Doe* v. *Petaluma City Sch. Dist.*, 830 F. Supp 1560, 1571-1576 (N.D. Cal. 1993) — ruling that a student's damages claim arising from peer sexual harassment was actionable under Title IX. The court there ruled the school district and employees were immune from § 1983 claims, but also indicated that this would not be so for a school counsellor who was sued in his individual capacity. *Id.* at 1577. On appeal, the United States Court of Appeals for the Ninth Circuit reversed, ruling that the law "was not clearly established, at the time of the [counsellor's] alleged inaction [1990 to 1992], that he had a duty to prevent peer sexual harassment." *Doe* v. *Petaluma City Sch. Dist.*, 54 F.3d 1447, 1451 (9th Cir. 1995).[21]

The plaintiffs rely on the decision of the United States Court of Appeals for the First Circuit in *Lipsett* v. *University of Puerto Rico*, 864 F.2d 881, 895-896 (1st Cir. 1988). In *Lipsett*, a female physician alleged that she was sexually harassed by her male peers while she was participating in a surgery residency program sponsored by a public university. She sued the university and its supervisory officials under both Title IX and § 1983.

The First Circuit reversed a summary judgment that had issued in favor of the university and supervisory officials. The court ruled that, in a Title IX case, a school "is liable upon a finding of hostile environment sexual harassment perpetrated by its supervisors upon employees *if* an official representing that institution knew, or in the exercise of reasonable care, should

[20]An earlier Supreme Court opinion, *Franklin* v. *Gwinnett County Pub. Schs.*, 503 U.S. 60 (1992), cited by the plaintiffs, did not speak to an issue of the personal liability of a school official.

[21]Scholars who had canvassed the relevant case law reached the same conclusion: that the law was not "clearly established," as of the period from 1996 to 1997, so that a school official could be said to have had fair warning that he or she could be held personally liable for damages under § 1983 for having failed to take remedial measures responsive to student-on-student harassment. See Cheng, Boys Being Boys and Girls Being Girls: Student-to-Student Sexual Harassment From the Courtroom to the Classroom, 7 U.C. L.A. Women's L.J. 263, 298-315 (1997); McCarthy, Students as Victims of Sexual Harassment: The Evolving Law, 27 J.L. & Educ. 401, 409-421 (1998).

have known,[22] of the harassment's occurrence, *unless* that official can show that he or she took appropriate steps to halt it." *Lipsett* v. *University of Puerto Rico*, 864 F.2d at 901. The court determined that this standard also applied to situations where the plaintiff's "co-workers" perpetrate the harassment. *Ibid.* Apart from the Title IX claim, the defendant officials in *Lipsett* were sued under § 1983.

The First Circuit ruled that a State official, sued under § 1983 in his official or individual capacity, can be held liable for the behavior of his subordinates if (1) subordinates under his charge infringed a victim's constitutional rights, and (2) the official's conduct was shown to be affirmatively linked to the discriminatory acts in the sense that the former's action or inaction could be characterized as supervisory encouragement, condonation, acquiescence in, or gross negligence amounting to deliberate indifference. *Id.* at 902.

The First Circuit explained, however, that its holding was "limited to the context of employment discrimination." *Id.* at 897.[23] This is a critical distinction from the instant appeal, and because the *Lipsett* holding is limited to a mixed educational and employment setting (i.e., a workplace environment at a medical facility owned by a university), the First Circuit did not address the situation presented here of peer sexual harassment solely in a school setting. Thus, even if we were to accept the argument that a reasonable school official ought to have been cautioned by *Lipsett*, we must conclude that the duty of school officials to take objectively reasonable remedial action to address known student-on-student sexual harassment was not "clearly established" until 1999, when *Davis* was announced by the United States Supreme Court. It was *Davis* that made it "apparent" to school boards and individual school officials that liability could be imposed against them for having failed to take such objectively reasonable remedial action. See note 15, *supra*.

(ii) *Section 1983.* Prior to 1997, some Federal courts had

---

[22]Subsequently, the United States Supreme Court in *Gebser* rejected a standard of constructive notice for imposing liability against a school board under Title IX. 524 U.S. at 287-288.

[23]The plaintiff in *Lipsett* was both a student and employee of the university. *Lipsett* v. *University of Puerto Rico*, 864 F.2d at 897.

ruled a student's constitutional rights were violated by having been sexually harassed or molested by a teacher or school employee. See *Stoneking* v. *Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990); *Doe* v. *Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-454 (5th Cir.), cert. denied sub nom. *Lankford* v. *Doe*, 513 U.S. 815 (1994); *Doe* v. *Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996). Those decisions are distinguishable from the present situation because the former had all involved sexual misconduct of an employee or teacher, and not harassment or abuse by a peer of the student-victim.

Because it was not clearly established until the United States Supreme Court's decision in *Davis* that school officials could be held liable under § 1983 for failing to take action to remedy known student-on-student sexual harassment, Gurnon's motion asserting a defense of qualified immunity should have been allowed. The portion of the Superior Court judge's order of July 20, 2004, denying that motion is reversed, and an appropriate order in Gurnon's favor shall enter consistent with this opinion. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.[24]

*So ordered.*

---

[24]By their amended complaints, the plaintiffs also alleged claims of Title IX violation; § 1983 (substantive due process based) violation; breach of contract; and fraudulent inducement, as against the school, its board, Gurnon, Roy A. Fulgeras (school's director of admissions), the board of trustees of the State colleges, and the Board of Higher Education. Certain of these claims remain pending in the trial court, but none, however, are the subject of or otherwise involved in the present appeal.