NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-91                                          Appeals Court

JUDE CRISTO  vs.  LEWIS EVANGELIDIS.[1]

No. 15-P-91.

Worcester.     November 2, 2015. - October 28, 2016.

Present:  Agnes, Sullivan, & Blake, JJ.


Civil Rights, Immunity of public official, Termination of
    employment.  Employment, Retaliation, Termination.
    Constitutional Law, Freedom of speech and press, Public
    employment.  Public Employment, Termination.  Practice,
    Civil, Summary judgment, Civil rights.  Sheriff.



    Civil action commenced in the Superior Court Department on
September 6, 2011.

    A motion for summary judgment was heard by David
Ricciardone, J.


    Andrew J. Abdella for the defendant.
    Timothy M. Burke for the plaintiff.


    AGNES, J.  The question before us is whether the defendant,

Lewis Evangelidis, sheriff of Worcester County, was entitled to

judgment as a matter of law on count three of the plaintiff Jude

_____

    [1] Individually and as sheriff of Worcester County.

Cristo's complaint, charging Evangelidis with a violation of 42 U.S.C. § 1983.[2]  In particular, Cristo alleges that Evangelidis retaliated against him by terminating him from employment in the Worcester County sheriff's office (sheriff's office or department) on January 7, 2011, for exercising his rights under the First Amendment to the United States Constitution in early 2010, the year before Evangelidis took office.  For the reasons that follow, we conclude that Evangelidis's motion for summary judgment, based on the defense of qualified immunity, should have been allowed because on the record before us, Cristo's speech, while related to matters of public concern, was undertaken in his capacity as an employee of the sheriff's office, and not as a private citizen.[3]  See Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

---

[2] Cristo's original complaint consisted of four counts:  a whistleblower claim pursuant to G. L. c. 149, § 185; a Massachusetts Civil Rights Act (MCRA) claim pursuant to G. L. c. 12, §§ 11H and 11I; a civil rights claim pursuant to 42 U.S.C. § 1983; and a conspiracy claim arising out of the elimination of his position at the Worcester County sheriff's office on January 7, 2011.  Cristo's MCRA and conspiracy claims were dismissed on Evangelidis's motion.  Cristo later stipulated to a dismissal with prejudice of his whistleblower claim.  The remaining count, involving the § 1983 claim in which damages are sought against Evangelidis in his personal capacity, was ordered stayed pending appeal by a single justice of this court.  See note 3, infra.

[3] Ordinarily, there is no right to an appeal from an order denying a party's motion for summary judgment.  However, when the motion for summary judgment is based on the defense of qualified immunity, the order denying qualified immunity is

Background.  We view the summary judgment record in the light most favorable to Cristo, the nonmoving party.  Cristo was hired in June, 1999, as the assistant personnel director of the sheriff's office.  Cristo was promoted to human resources director of the sheriff's office in February, 2006, by Guy Glodis, Evangelidis's predecessor.  Shortly thereafter, Cristo was also appointed by Glodis to be the payroll director, and given other human resource duties.  When, during the summer of 2009, Glodis decided not to seek reelection as sheriff, Shawn P. Jenkins assumed the role of acting sheriff.

In early 2010, Cristo expressed concerns to Jenkins, and to deputy superintendent Paul Legendre, that assistant deputy superintendent Scott Bove, a candidate for the sheriff's position, was not performing his human resource duties and was away campaigning as a candidate for sheriff for some portion of days he marked himself present at the department.  Jenkins and Legendre informed Cristo that they were aware of the situation.  Cristo also told Jenkins and Legendre that he personally observed Captain Jason Dickhaut, who had duties relating to the payroll for line staff at the sheriff's office, helping Bove with his campaign for sheriff during work hours, and that

treated as a final order and is immediately appealable.  See Mitchell v. Forsyth, 472 U.S. 511, 525-526 (1985); Littles v. Commissioner of Correction, 444 Mass. 871, 876 (2005); Matthews v. Rakiey, 38 Mass. App. Ct. 490, 493 (1995).

Dickhaut had given bumper stickers supporting Bove's candidacy to Cristo's assistant for payroll and asked her to record "missed punches" in the department's time clock system for him and others. Because Dickhaut's sporadic attendance and failure to perform his payroll duties were "causing problems with the department's ability to process the payroll in a timely manner," Cristo brought his concerns directly to Jenkins, who supervised Dickhaut.

On Friday, February 19, 2010, Dickhaut confronted Cristo about the complaints made by Cristo about Dickhaut's campaign activities on department time and Dickhaut's interactions with human resource and payroll personnel. Dickhaut was loud and hostile. Jenkins, who was in the next office when Dickhaut confronted Cristo, told Cristo that he had heard the exchange. When asked what he was going to do about it, Jenkins reportedly laughed, and told Cristo "that he let it go on" and "to go home early." The following weekend, Cristo prepared a five-page report on Dickhaut's violations of law and the department's own regulations, but did not submit it to Jenkins.

Cristo attended a meeting with Jenkins and Legendre on Monday, June 14, 2010. Cristo reminded them of the confrontation Dickhaut had initiated with him, and informed them about the five-page report he had prepared. They did not ask him to submit it. Cristo also brought up his ongoing concerns

about Bove's campaign activities and his failure to keep accurate time records, as well as an issue about missing radios that were the property of the department. Jenkins expressed concerns that by putting things in electronic mail (e-mail) messages and writings, Cristo was making him (Jenkins) look like he was not interested in addressing these issues. Cristo told them he simply wanted these problems resolved.

On November 7, 2010, Evangelidis, as sheriff-elect, was interviewed by the Worcester Telegram and Gazette and reportedly said that it was not his intention to replace everyone then employed by the sheriff's office, that he had not yet picked anyone for the management positions, that he was willing to interview current employees, and that if they were doing their jobs well, "they should feel comfortable in the fact that they can keep the job."

Cristo attended the inauguration ceremony for the new sheriff on January 5, 2011. Cristo approached Evangelidis and introduced himself. Evangelidis replied, "Jude Cristo?" and walked away. The following day, an article about Evangelidis's inauguration appeared in the Worcester Telegram and Gazette in which Evangelidis was quoted as saying that he "is giving employees at the jail a chance to prove themselves." The next day, Cristo was called to a meeting with Jenkins at 3:00 P.M. Jenkins told Cristo that his position was being abolished, and

that if he agreed to resign, he could work for two more weeks. Cristo declined the invitation. Jenkins then handed Cristo an envelope which he said contained Cristo's final check and termination letter.

On January 13, 2011, Cristo requested, in writing, a full accounting of what he had been paid and copies of his personnel file, medical file, and e-mails. He also inquired whether he would receive the same $2,000 severance check that other employees who had been laid off several weeks earlier had received. Cristo also sent a letter to Evangelidis appealing his termination under a department regulation. On January 14, 2011, Jenkins sent an e-mail to certain sheriff's office personnel advising them that employee records and personnel files were not to be destroyed or deleted, and that if any information was requested by Cristo, the request was to be forwarded to Jenkins or chief of staff Jason Rives. Staff were also verbally informed not to have any contact with Cristo.

On January 25, 2011, Rives sent a letter to Cristo explaining that unlike the other former employees, he was not entitled to severance pay because he was not first placed on administrative leave, and that the decision to make the payments was made by the outgoing sheriff. On February 3, 2011, Jenkins sent a letter to Cristo dismissing his appeal and informing him

that he lacked the financial background to perform the duties of the new "combined position."

On March 21, 2011, Cristo wrote to the State retirement board to inform it of a $3,000 pay raise he had received from Glodis in the summer of 2007, which was not included in the salary information provided to the retirement board by the sheriff's office. On March 29, 2011, the retirement board sent a letter to the sheriff's office requesting information about the $3,000. Jenkins responded in writing to the retirement board and stated that the $3,000 was not a salary increase, but a bonus, but did not submit "factual documentation" in support of his statement.

On April 4, 2011, Cristo was notified by the retirement board that his retirement had been approved retroactive to January 7, 2011, the date of his termination. That same day, Cristo sent a letter to Rives requesting that he be paid twenty percent of his accumulated sick leave days as of the date of his termination. On April 12, 2011, the retirement board informed Cristo that based on the information it had received from the sheriff's office, it could not add $3,000 to his salary for purposes of calculating his retirement benefit. Cristo appealed this decision. On May 16, 2011, Rives informed Cristo in writing that he would not be paid a percentage of his

accumulated sick leave because Cristo had been "terminated" from his employment with the sheriff's office.

In May, 2011, the sheriff's office hired another individual to fill the newly created position of "Director of Administration and Finance/CFO," which consolidated the various positions previously held by Cristo. Prior to joining the sheriff's office, the newly hired person had served as the part-time treasurer of the town of Barre.

Discussion. 1. Standard of review. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party's case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). "If the moving party establishes the absence of a triable issue, the party opposing

the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment."  Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).

2.  Section 1983 retaliation claim.  In order to prevail on his First Amendment retaliation claim, Cristo must establish three things are more likely than not:  (1) that he was speaking "as a citizen on a matter of public concern"; (2) that his interests, "as a citizen, in commenting upon matters of public concern" outweighed his employer's interest "in promoting the efficiency of the public services it performs through its employees"; and (3) "that the protected expression was a substantial or motivating factor in the adverse employment decision."  Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011), quoting from Curran v. Cousins, 509 F.3d 36, 44-45 (1st Cir. 2007).

3.  Qualified immunity.  "Even when an official is personally liable under § 1983, he may be shielded from paying damages when the doctrine of qualified immunity applies. . . . [Q]ualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate clearly established statutory authority or constitutional rights of which a reasonable person would have known.  Qualified immunity is an

affirmative defense, and thus the burden of proof is on defendants-appellants."  DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001) (citation and quotation omitted).  See Baker v. Gray, 57 Mass. App. Ct. 618, 622 (2003); Ahmad v. Department of Correction, 446 Mass. 479, 484 (2006).

There is a tripartite test for determining whether a defendant is entitled to the defense of qualified immunity in a case such as this:  (1) whether the facts taken in the light most favorable to the plaintiff demonstrate that there was a violation of the plaintiff's Federal constitutional or statutory rights;[4] (2) if so, whether at the time of the violation those rights were clearly established; and (3) whether a reasonable person in the defendant's position would understand that his conduct violated those clearly established rights.  See Nelson v. Salem State College, 446 Mass. 525, 531 (2006).  See also Saucier v. Katz, 533 U.S. 194, 200-201 (2001); White v. Gurnon, 67 Mass. App. Ct. 622, 627 (2006).  The present case is one in which there is overlap between the first element of Cristo's § 1983 claim and the first question to be addressed in determining whether Evangelidis is entitled to qualified immunity, namely, whether Cristo is able to prove that

---

[4] "[Section] 1983 protects against the violation of Federal statutes and constitutional provisions.  It does not protect against the violation of State statutes."  Baker v. Gray, 57 Mass. App. Ct. 618, 624 (2003).

Evangelidis violated his First Amendment rights. See Clancy v. McCabe, 441 Mass. 311, 322 (2004), quoting from Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (although inquiry into whether there is qualified immunity is "separate and distinct" from assessment of merits of plaintiff's case, they sometimes "overlap").

In denying the motion for summary judgment, it appears that the judge assumed that Cristo was engaged in the exercise of his First Amendment rights when he complained to Jenkins about the conduct of Bove and Dickhaut, because his decision turned on the reason for Cristo's termination.[5] On the record before us, however, such an assumption cannot be squared with the holding in Garcetti v. Ceballos, 547 U.S. 410. In Garcetti, the United States Supreme Court clarified the law regarding qualified immunity by declaring that when a public employee like Cristo makes a statement pursuant to his official duties, he is not

---

[5] In denying the motion for summary judgment, the judge concluded that Evangelidis's "alleged motivations" created "the ultimate questions of material fact," which suggests that the judge may have denied relief based on the view that Evangelidis could be liable for damages if he harbored a subjective intent to retaliate against Cristo. In his order staying the proceedings pending review by this court (see note 2, supra), the single justice noted that that approach "contravenes the Supreme Court's intent to restrict the question of qualified immunity to 'an objective inquiry into the legal reasonableness of the official action.'" Clancy v. McCabe, 441 Mass. at 323, quoting from Anderson v. Creighton, 483 U.S. 635, 645 (1987). In view of the approach we take, it is unnecessary to explore this question further.

speaking as a citizen in the exercise of First Amendment rights. The Court relied on the First Amendment analysis set forth in Pickering v. Board of Educ. of Township High Sch. Dist. 205, Will City, 391 U.S. 563, 568 (1968), and Connick v. Myers, 461 U.S. 138, 142 (1983), and acknowledged that the initial question in cases such as this is whether the content of the public employee's speech related to "a matter of public concern." Garcetti, supra at 418. Here, this question is easily answered in the affirmative because Cristo was calling attention to the fact that other public employees in the sheriff's office were not performing their assigned duties, conducting the private business of campaigning for public office while they were supposed to be working for the sheriff's office, and committing other acts in violation of law. However, the Garcetti court added a further requirement that must be met before it can be said that a public employee has exercised First Amendment rights. "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421. The Court reasoned that when an employee performs tasks that are part of his duties, the employee's supervisors have a right to review and evaluate his performance independent of judicial oversight. Id. at 423. On

the other hand, when an employee "speaks as a citizen addressing matters of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences." Ibid.

The determination of the scope of a public employee's duties calls for a "practical" rather than a formal inquiry -- one that depends not simply on a job description, but also on the duties that the employee was expected to perform. Decotiis v. Whittemore, 635 F.3d at 31, quoting from Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 26 (1st Cir. 2010). In the present case, we have the benefit of a record that contains Cristo's deposition in which he testified in detail about the workplace complaints he brought to the attention of Jenkins and others.

On the record before us, there are no material facts in dispute with regard to whether Cristo spoke in his capacity as an employee of the sheriff's office or as a private citizen. Cristo learned about the matters that he reported to Jenkins in the course of performing his job duties. The subjects of his speech are all matters that are directly related to Cristo's myriad duties as payroll director, and his other human resource responsibilities. Cristo's first complaint to Jenkins was that Bove was not performing his human resource duties and not working full days -- matters that relate directly to Cristo's responsibilities. Cristo's second complaint to Jenkins was

about Dickhaut's attendance.  In making this complaint, Cristo specifically stated that Dickhaut's conduct was interfering with Cristo's ability to perform his payroll duties.  Cristo's third complaint to Jenkins concerned missing radios that were the property of the sheriff's office.  Once again, during his deposition testimony, Cristo specifically explained that one of his duties was to ensure that when employees left the sheriff's office, they filled out a form that itemized the return of any sheriff's office equipment that was issued to them.  Cristo aired his complaints while on duty.  Cristo did not share the contents of his complaints with anyone other than his immediate supervisor.  Cristo did not make use of a forum outside the workplace to communicate his complaints.  Contrast Pickering, 391 U.S. at 566 (plaintiff wrote letter to local newspaper); Decotiis, supra at 28 (plaintiff urged clients to contact advocacy organizations); Curran, 509 F.3d at 41 (plaintiff made Internet postings).

We conclude that Cristo's communications to Jenkins were "made exclusively to fulfill [his] responsibilities" as the director of payroll and human resources.  See O'Connell v. Marrero-Racio, 724 F.3d 117, 123 (1st Cir. 2013) (human resource director who complained about unethical and illegal activities in workplace was not speaking as private citizen for First Amendment purposes).  A defendant is not required to establish

that the employee had a specific duty to speak or to lodge a complaint. Instead, courts should examine the context in which the public employee's speech occurred. Decotiis, 635 F.3d at 32.

Cristo's response that his speech concerned matters of public concern is beside the point because under the analytical framework developed in Garcetti, it is not sufficient that an employee's speech relates to matters of public concern. Under governing Federal law,[6] "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421. See Lane v. Franks, 134 S. Ct. 2369, 2373 (2014) (If "speech is made pursuant to the employee's ordinary job duties, then the

---

[6] Count three is based exclusively on an alleged violation of Federal law, namely, the First Amendment. We have no occasion and decline to express an opinion whether under the Massachusetts Declaration of Rights a public employee's right to be protected against discipline by his public employer that is based on the employee's workplace speech is broader than the protections recognized by the Supreme Court in Garcetti. See, e.g., Trusz v. UBS Realty Investors, LLC, 319 Conn. 175, 216 (2015) (adopting view expressed by Justice Souter, in his dissenting opinion in Garcetti, 547 U.S. at 435, that "comment on official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety can weigh out in an employee's favor" when the employee's speech concerns official duties).

employee is not speaking as a citizen for First Amendment purposes").[7]

Conclusion.  For the above reasons, the order denying Evangelidis's motion for summary judgment is vacated.  The case is remanded to the Superior Court for entry of an order allowing the motion for summary judgment.

So ordered.

---

[7] Evangelidis also maintains that the summary judgment record contains no evidence that would support an inference that there was a causal relationship between his decision to terminate Cristo and Cristo's complaints before Evangelidis became sheriff.  See Clancy v. McCabe, 441 Mass. at 321, quoting from Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997) (more than "mere cause-in-fact relationship" is required).  The evidence in the summary judgment record that bears directly on this question is that in his deposition, Evangelidis states he did not learn of Cristo's complaints until after Cristo filed this lawsuit.  Also, Jenkins states in his affidavit that he did not inform Evangelidis of Cristo's complaints until after this lawsuit was filed.  Cristo, in turn, relies on an incident at Evangelidis's inauguration event in which he states that Evangelidis abruptly walked away from him without speaking after they were introduced, and the timing of his termination, coming only days after Evangelidis was sworn in as sheriff.  In view of our decision with respect to qualified immunity, it is unnecessary for us to address this factual dispute.