HENRY, J.
The plaintiff, Teresa Krupien, an employee of the Chelsea Soldiers' Home (the home), brought this action in Superior Court against the home's chief operating officer and acting superintendent, Elizabeth Anne Ritcey; and the home's human resources liaison, Faith M. Kirkland (collectively, defendants). Krupien alleges that Kirkland and Ritcey substantially burdened her right to the free exercise of her religion in violation of the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I (the MCRA). Ritcey and Kirkland barred Krupien from the home's campus, which includes Krupien's church, during an investigation of a claim by another employee that Krupien injured that employee's wrist while transferring a patient from a bed to a wheelchair. The stay-away directive,[2] until subsequently modified, prohibited Krupien from attending her church for thirty-seven days, including Christmas. The sole issue before this court is whether the defendants, State actors, are entitled to qualified immunity.[3] We conclude that they are not.
Background. In reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party. Curtis v. School Comm. of Falmouth, 420 Mass. 749, 753, 652 N.E.2d 580 (1995).
Krupien began working at the home, a Commonwealth facility, in 1994. The home's campus includes the Quigley building, from which the home operates. Also on the campus are the St. Michael's Chapel (chapel) and several other buildings. The chapel serves both patients from the home and outside persons. The buildings are distinct and not connected above ground; they are connected through an underground tunnel.
On December 21, 2013, a coworker of Krupien's, Marlene Ravanis, alleged that Krupien injured Ravanis's wrist while they were moving a patient into a wheelchair. Shortly after the alleged incident, Ravanis reported the allegation to the charge nurse, Beth Moon, and to the nurse supervisor, Michele Nickerson.[4] Nickerson interviewed *305 Ravanis and asked her if she felt uncomfortable working with Krupien. Ravanis replied, "No," and declined Nickerson's offer to move to a different part of the home. Although Ravanis repeatedly asserted that her wrist was bruised, Nickerson did not observe bruising on Ravanis's wrist on December 21, 2013, nor the following day. Ravanis and Krupien worked together uneventfully for the remainder of the shift, including when Ravanis again asked Krupien to help her move a patient, which they accomplished without incident.
On December 23, 2013, Kirkland learned of the alleged incident between Ravanis and Krupien when Ravanis gave her a medical record indicating "possible tendinitis" and recommending that Ravanis remain out of work for ten days. Kirkland reviewed written statements, interviewed Ravanis and Martin, and discussed this medical record with Ritcey. Kirkland did not know or ask Ravanis if Ravanis had a work-related need to enter the chapel, if she took patients from the home to the chapel, or if she herself attended the chapel. Kirkland did not review Krupien's personnel file.[5]
Kirkland advised Ritcey what should be done -- that Krupien should be given a stay-away directive. As a result of her discussion with Kirkland, Ritcey suspended Krupien with pay and signed a letter that stated:
"I am ordering you to refrain from entering the property of the Chelsea Soldier[s'] Home and from contacting any of its employees. Failure to heed my directive will result in contacting appropriate law enforcement agencies and appropriate administrative action."
That same day, via a telephone call, Kirkland informed Krupien about the stay-away directive. Krupien alleges, and we take to be true for the purpose of summary judgment, that during this call she informed Kirkland that her church was located on the campus of the home; that she has attended services at the chapel continuously for nineteen years, since 1994; that she wanted to attend Christmas service in two days; and that she was very involved in that worship community. Kirkland advised Krupien to go to another church. As a result of the stay-away directive, Krupien was not able to attend services at the chapel, which she describes as her "spiritual home."[6]
On January 31, 2014, Ritcey and Kirkland sought legal counsel for the first time concerning the alleged incident and, that same day, the home modified the directive (the modified directive) thereby allowing Krupien to return to the chapel and to her second job at the United States Department of Veterans Affairs facility under certain conditions. By the date of the modified directive, the stay-away directive had prevented Krupien from attending her church for thirty-seven days.
Discussion. On appeal, summary judgment is reviewed de novo. See Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637, 977 N.E.2d 552 (2012). "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled *306 to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).
"[T]he relevant inquiry on summary judgment as to the defense of qualified immunity is whether a reasonable official could have believed his actions were lawful, in light of clearly established law and the information possessed by the official at the time he acted." Clancy v. McCabe, 441 Mass. 311, 322, 805 N.E.2d 484 (2004). We apply a three-part test which asks "(1) whether the facts taken in the light most favorable to the plaintiff demonstrate that there was a violation of the plaintiff's ... constitutional or statutory rights; ... (2) if so, whether at the time of the violation those rights were clearly established; and (3) whether a reasonable person in the defendant's position would understand that his conduct violated those clearly established rights."[7] Cristo v. Evangelidis, 90 Mass. App. Ct. 585, 590, 62 N.E.3d 94 (2016). Qualified immunity is an affirmative defense and the defendants have the burden of proof. Id.
It is undisputed that Ritcey and Kirkland implemented a stay-away directive that barred Krupien from the home's campus and, therefore, for a period of time, prohibited her from attending her place of worship. For purposes of this opinion, we take Krupien's allegations as true that she immediately told Kirkland that she worshipped at the chapel on the campus and that she wished to attend the Christmas services. The stay-away directive clearly interfered with Krupien's ability to worship in the church she identifies as her spiritual home. Accordingly, there is sufficient evidence for a trier of fact to find that Ritcey and Kirkland substantially interfered with Krupien's freedom of religion in violation of the MCRA.[8]
At issue is whether it was clearly established that the prohibitions against Krupien violated her freedom of religion, and whether a reasonable person in Kirkland's and Ritcey's positions "would appreciate that the conduct in question was unlawful." LaChance v. Commissioner of Correction, 463 Mass. 767, 777, 978 N.E.2d 1199 (2012), quoting Longval v. Commissioner of Correction, 448 Mass. 412, 419, 861 N.E.2d 760 (2007). Ritcey and Kirkland argue, and the judge concluded, that it was not clearly established that an employer's stay-away directive, in place while the employer investigated an employee misconduct claim, violated a constitutional *307 right because there were no cases at that time with similar issues on point. However, "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.' " United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). See Caron v. Silvia, 32 Mass. App. Ct. 271, 273, 588 N.E.2d 711 (1992) ("To overcome a claim of immunity, it is not necessary for the courts to have previously considered a particular situation identical to the one faced by the government official. It is enough, rather, that there existed case law sufficient to clearly establish that, if a court were presented with such a situation, the court would find that the plaintiff's rights were violated") (citations omitted).
"When a fundamental right is at stake, the so-called 'strict scrutiny' formula for examining the constitutionality of State infringement on that right comes into play. See Aime v. Commonwealth, 414 Mass. 667, 673 [611 N.E.2d 204] (1993). This formula traditionally is stated in terms of requiring (1) a legitimate and compelling State interest to justify State action, and (2) careful examination to ascertain whether the action taken was 'narrowly tailored to further [that] interest.' [ Id. ]" Blixt v. Blixt, 437 Mass. 649, 655-656, 774 N.E.2d 1052 (2002).[9] See Ahmad v. Department of Correction, 446 Mass. 479, 485, 845 N.E.2d 289 (2006) ; Rasheed v. Commissioner of Correction, 446 Mass. 463, 465, 845 N.E.2d 296 (2006) ; AttorneyGen. v. Desilets, 418 Mass. 316, 330-331, 636 N.E.2d 233 (1994) ; Commonwealth v. Martin, 417 Mass. 187, 193, 629 N.E.2d 297 (1994). "[O]nly those interests of the highest order ... can overbalance legitimate claims to the free exercise of religion." Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). "The state may justify an inroad on religious liberty [only] by showing that it is the least restrictive means of achieving some compelling state interest." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).[10]
*308 Although the exact factual circumstances presented here seemingly were unprecedented at the time of the stay-away directive, the standard to which the defendants were bound was clearly established by December, 2013, when the defendants issued that directive, and it would be difficult to imagine a situation where an employer so obviously impeded an employee's religious freedoms. See Lanier, 520 U.S. at 271, 117 S.Ct. 1219 ("the easiest cases don't even arise. There has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability") (citation omitted). Here, on its large multibuilding campus, the State chose to offer a place of worship open to all.[11] In light of the absence of any evidence that Krupien would encounter Ravanis at the chapel, was a menace to others at the chapel, or was a general menace, a reasonable official in both Kirkland's and Ritcey's positions would have understood, with the information they possessed at the time or would have known with the information they failed to gather, that unilaterally barring Krupien from attending the chapel was not narrowly tailored.[12] The stay-away directive thus violated clearly established religious rights.[13]
Therefore, the defendants were not entitled to qualified immunity. So much of the judgment as dismisses Krupien's MCRA claims against Kirkland (count V) and Ritcey (count VI) is vacated. The remainder of the judgment is affirmed.[14]
So ordered.

The parties and the judge referred to the directive as a stay-away "[o]rder." To avoid confusion, we use the term "directive" because this was not a judicially imposed order.

Other claims and other defendants were dismissed on summary judgment but are not at issue in this appeal.

Nickerson wrote a report the next day that said that another employee, Lyneth Martin, witnessed the incident and said that Krupien "touched" Ravanis's hand and removed it from the wheelchair. Martin's December 21, 2013, written statement regarding the incident indicates that Krupien touched Ravanis or pushed or moved her hand from the wheelchair. At a deposition in this matter, Martin stated that Krupien "grabbed" Ravanis's hand and that Ravanis stumbled.

In December, 2013, based on Ravanis's allegation, Kirkland had a concern Krupien might assault another employee. Ritcey did not have a concern that Krupien would hurt anyone.

The stay-away directive also prevented Krupien from working a second job that she held at a United States Department of Veterans Affairs adult day care facility, which also was housed on the campus.

Qualified immunity principles developed under 42 U.S.C. § 1983 apply equally to MCRA claims. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 595, 747 N.E.2d 729 (2001).

The defendants argue that the judge failed to consider the qualification of the right to worship set forth in art. 2 of the Massachusetts Declaration of Rights stating that a person has the right to worship "provided he doth not disturb the public peace." The defendants argue that a possible assault at Krupien's workplace qualifies as "disturb[ing] the public peace" for the purpose of art. 2. However, there is no claim that Krupien's manner of worship would qualify as "disturb[ing] the public peace" as the phrase has been defined. See Society of Jesus of New England v. Boston Landmarks Comm'n, 409 Mass. 38, 42-43, 564 N.E.2d 571 (1990), and cases cited. To the extent that a person's disturbance of the peace somewhere other than a place of worship and not during a person's exercise of religion could meet the limitation of art. 2, it would be a fact-specific inquiry which, on this record, is not suitable for summary judgment. Sause v. Bauer, --- U.S. ----, 138 S.Ct. 2561, 2563, 201 L.Ed.2d 982 (2018) (remanding free exercise and qualified immunity claims for factual development concerning how officers obtained access to plaintiff's apartment and what officers wanted her to do when they ordered her to stop praying).

To the extent that the defendants contend that this was a general policy applicable to every employee accused of workplace violence, the facts belie that contention. The home's policy guide indicates that an employee may be removed from the campus for prohibited behavior. When there is an "actual act of violence," the policy guide provides that law enforcement must be immediately contacted to remove the individual from the premises. Krupien completed work that day and the next. Moreover, to the extent a general policy is applicable, once the party claiming an unconstitutional burden of the free exercise of religion establishes "(1) a sincerely held religious belief, which (2) conflicts with, and thus is burdened by, the [S]tate requirement ... [t]he [S]tate can prevail only by demonstrating both that (3) the requirement pursues an unusually important governmental goal, and that (4) an exemption would substantially hinder the fulfillment of the goal." Magazu v. Department of Children & Families, 473 Mass. 430, 443, 42 N.E.3d 1107 (2016) (citation omitted). As discussed infra, the defendants could not show that an exemption here to allow Krupien to attend worship services would substantially hinder the home's safety goal.

We consider Federal cases concerning religious worship because the standard applied by Massachusetts courts for free exercise claims is the same as articulated by the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb et seq. ), which requires "the least restrictive means of furthering that compelling governmental interest." Desilets, supra at 322 n.5, 636 N.E.2d 233.

The chapel was not restricted, for example, for use only by patients and employees of the home. Nothing in this decision would prohibit the State as a property owner from offering a place of worship restricted to the users of a State-owned facility.

This is not a case where Krupien was alleged to have been violent at a religious facility or violated the rules of the religious facility itself. There also was no indication that Krupien would come into contact with Ravanis at the chapel. Nothing in this decision limits the ability of the State to issue a stay-away directive that includes a place of worship at the campus of a State employer where the employee is alleged to be a general menace or if the employee had intentionally injured someone at the place of worship or who frequented the place of worship. See Rogers v. Johnson-Norman, 466 F.Supp.2d 162, 168 (D.D.C. 2006) (noting that United States Court of Appeals for the District of Columbia held that restraining order that barred defendant from plaintiff's church did not violate free exercise clause).

Moreover, we think it clear that a reasonable official would have understood that employees of the Commonwealth would have at least as much protection as those confined in the Commonwealth's correctional facilities. Under that standard, policies of a facility that burden the right to the free exercise of religious beliefs "must advance compelling State interests and be tailored narrowly in pursuit of those interests." Ahmad, 446 Mass. at 485, 845 N.E.2d 289.

Kirkland argues that, at the least, her actions were ministerial and she therefore cannot be liable for the issuance of the stay-away directive. The judge did not reach this issue. We decline to reach it particularly where the record indicates that Ritcey has testified that Kirkland advised Ritcey as to what should be done.